**The PEOPLE of the State of Colorado, Complainant,**

v.

**Wendelin Williams DeLOACH, Attorney–Respondent.**

**No. 97SA219.**

Supreme Court of Colorado, En Banc.

Sept. 15, 1997.

Linda Donnelly, Disciplinary Counsel, Kenneth B. Pennywell, Assistant Disciplinary Counsel, Denver, for Complainant.

DiManna & Jackson, Gary M. Jackson, Denver, for Attorney–Respondent.

PER CURIAM.

An inquiry panel of the supreme court grievance committee approved a stipulation, agreement, and conditional misconduct between the respondent and the assistant disciplinary counsel. *See* C.R.C.P. 241.18. The conditional admission recommended discipline in a range from a public censure to a thirty-day suspension from the practice of law. In approving the conditional admission, the panel recommended a thirty-day suspension. We accept the conditional admission and the inquiry panel's recommendation.

I.

The respondent has been licensed to practice law in Colorado since 1990. The conditional admission provides as follows. On March 31, 1995, Orlando Domena was arrested for the murder of Charles Baker and the attempted murder of Mikael Edlow. Domena hired the respondent to represent him.

Darryl Givens was arrested in the same homicide case on April 9, 1995. The respondent had previously represented Givens on unrelated traffic and revocation of probation matters and had acted as liaison with a Nevada lawyer in a forfeiture proceeding involving Givens in Nevada.

At Domena's initial advisement hearing on April 12, Givens asked the respondent to represent him, but respondent told Givens that she could not because she was representing Domena. Two lawyers were subsequently appointed to represent Givens.

During her investigation of the homicide, the respondent and her investigator developed information that supported her client's and Givens's claims of innocence. In April and May of 1995, Givens initiated telephone calls to the respondent in which respondent discussed her investigative efforts. She visited Givens in the jail on seven occasions and discussed the homicide with him. Her investigator also visited Givens at the jail. All of the foregoing contacts between Givens and the respondent were without the knowledge and consent of Givens's appointed lawyers. On September 21, 1995, one of Givens's appointed lawyers called the respondent and told her that he had learned that the respondent had been visiting Givens at the jail. The district judge presiding in the case ordered the respondent to have no further contacts with Givens.

The respondent has stipulated that the interests of her client and Givens were adverse because Givens was given favorable plea offers contingent upon his testifying against Domena. In their respective analyses of discipline, the complainant and the respondent indicate that Givens ultimately accepted a plea offer which resulted in the dismissal of the charges against him in ex-

change for his testimony at Domena's trial in early 1996. The respondent represents that Givens was shot and killed in October 1996.

The respondent admits that her conduct violated Colo. RPC 1.7(a) (representing a client if the representation of that client will be directly adverse to another client); Colo. RPC 4.2 (communicating about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter); and Colo. RPC 8.4(d) (engaging in conduct that is prejudicial to the administration of justice).

## II.

In the conditional admission, the respondent consents to the imposition of discipline in the range of public censure to a thirty-day suspension. The inquiry panel recommended a thirty-day suspension. In connection with the conditional admission, the respondent has also agreed to certain additional conditions including the monitoring of her practice by another lawyer.

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." ABA *Standards* 4.32. Similarly, "[s]uspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and causes injury or potential injury to a party or causes interference or potential interference with the outcome of the legal proceeding." *Id.* at 6.32.

On the other hand, a public censure is warranted if the lawyer is at most "negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client." *Id.* at 4.33. A public censure is also appropriate "when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding." *Id.* at 6.33.

The potential for harm is significant. The respondent represented an individual accused of first-degree murder, and she communicated with his co-defendant, also charged with first-degree murder, about her investigation of the case without the knowledge or consent of the co-defendant's lawyers. The co-defendant was presumably considered less culpable than her own client as reflected by the plea bargains the prosecution offered the co-defendant. The interests of her client and Givens were adverse, since if Givens accepted the plea bargain, he would testify against her client. Because she was apparently convinced of Givens's innocence, she was at least indirectly encouraging him to go to trial and reject the prosecution's offers. Givens's lawyers believed that the respondent's contacts with Givens interfered with their ability to communicate the offers to him. Givens ultimately testified against the respondent's client (although she had withdrawn from representing Domena before trial), resulting in Domena's conviction.

The improper nature of the contacts should therefore have been obvious to the respondent. She had previously practiced with the Colorado Public Defender's Office in Denver, although she had not represented a client charged with murder before. Because the potential for harm was so high in a first-degree murder case, and with the number of unauthorized contacts demonstrating more than negligence on the respondent's part, we conclude that at least a short period of suspension is warranted. We reach this determination even after considering the factors in mitigation, which include the absence of a previous record of discipline, *see id.* at 9.32(a); cooperation in these proceedings, *see id.* at 9.32(e); and remorse, *see id.* at 9.32(*l*). Accordingly, we accept the conditional admission and the inquiry panel's recommendation, including the special conditions.

### III.

Accordingly, it is hereby ordered that Wendelin Williams DeLoach be suspended from the practice of law for thirty days, effective thirty days after this opinion is issued. The respondent is also ordered to pay the costs of this proceeding in the amount of $81.98 within thirty days of the date of this decision to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. In addition, the respondent shall abide by the special conditions of monitoring and attendance at the Mandatory Professionalism Seminar contained in paragraphs 8 and 9 of the conditional admission.

SCOTT and BENDER, JJ., do not participate.