The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Donald Keith ISHAM, Defendant–Appellant.

No. 94CA1388.

Colorado Court of Appeals, Div. V.

Nov. 24, 1995.

Rehearing Denied Jan. 4, 1996.

Certiorari Denied Sept. 3, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Matthew S. Holman, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Lee E. Christian, P.C., Lee E. Christian, Fort Collins, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

In this appeal from the denial of his motion for post-conviction relief pursuant to Crim.P. 35(c), defendant, Donald Keith Isham, claims

that ineffective assistance of counsel rendered his guilty plea invalid, that the coercive effect of his plea agreement rendered his guilty plea involuntary, and that his right to continued representation by appointed counsel was violated when the court arbitrarily disqualified his counsel of choice. He therefore contends that his guilty plea must be vacated. We affirm.

Defendant and his father each were charged with first degree murder. Defendant's appointed counsel (original counsel) filed a motion for suppression of evidence, supported by his own affidavit. Because of this, the trial court, after a brief hearing, disqualified original counsel on the basis of a conflict of interest.

At the same hearing, the court appointed replacement counsel, who was accepted by defendant. Subsequently, however, replacement counsel filed a motion to withdraw and, on behalf of defendant, requested reappointment of original counsel. The motion was denied. Defendant then sought relief pursuant to C.A.R. 21, but the supreme court declined to exercise jurisdiction.

Ultimately, with the assistance of replacement counsel, defendant entered a plea of guilty to second degree murder. One condition of the plea was that charges against his father, who was terminally ill, be dropped. After his father died, defendant filed this motion which was denied following a hearing.

## I.

Relying on *Anaya v. People,* 764 P.2d 779 (Colo.1988), defendant asserts that his Sixth Amendment right to counsel was violated when the trial court arbitrarily disqualified his counsel of choice. He contends, consequently, that his guilty plea must be vacated. We agree that the disqualification issue was not properly addressed but conclude that reversal is not required.

## A.

Under the Sixth Amendment article II, § 16 of the Colorado Constitution, a criminal defendant has a right to counsel. *People v. Garcia,* 815 P.2d 937 (Colo.1991), *cert.* *denied* 502 U.S. 1121, 112 S.Ct. 1242, 117 L.Ed.2d 475 (1992).

When counsel is retained, there is a presumption in favor of a defendant's choice of counsel. *See Rodriguez v. District Court,* 719 P.2d 699 (Colo.1986), *cert. denied* 498 U.S. 1055, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991); *see also Anaya v. People, supra.* However, an indigent defendant does not have the right to choose his appointed counsel. *People v. Arguello,* 772 P.2d 87 (Colo. 1989); *see* 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.4(a) (1984) (suggesting three administrative grounds for limiting indigents' choice in counsel appointment).

Indigent defendants are, nonetheless, "entitled to *continued and effective* representation by court appointed counsel in the absence of a demonstrable basis in fact and law to terminate that appointment." *Williams v. District Court,* 700 P.2d 549, 555 (Colo.1985) (emphasis added). Hence, once counsel is appointed, the parties' entry into an attorney-client relationship is no less inviolable than if the counsel had been retained by the defendant. *Rodriguez v. District Court, supra* (consideration of a defendant's preference for continued representation by the public defender permits waiver of right to conflict-free counsel to prevent disqualification of his attorney); *see also* ABA, *Standards for Criminal Justice* Standard 4–3.9 (1986) ("Once a lawyer has undertaken the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serving in a legal aid or defender program.").

The right to continue with any particular attorney, appointed or retained, may be outweighed, however, by the showing of an ethical conflict or a serious potential for conflict. When such a conflict arises, the preference for a particular attorney must be balanced with the right to have a defense conducted by an attorney who is free of such conflict. *See Tyson v. District Court,* 891 P.2d 984 (Colo.1995).

To balance these interests, the trial court must "assess the defendant's preference for particular counsel, the nature of the conflict, and the public's interest in maintain-

ing the integrity of the judicial process." *Tyson v. District Court, supra,* 891 P.2d at 990. In the case of an indigent defendant, his "desire for continued representation by the public defender is entitled to great weight." *Rodriguez v. District Court, supra,* 719 P.2d at 707. But, "[i]n some circumstances, fundamental considerations other than a defendant's desires are given controlling significance. These considerations relate to the paramount necessity of preserving the public confidence in the integrity of the administration of justice." *People v. Martinez,* 869 P.2d 519, 527 (Colo.1994).

Here, the trial court did not balance defendant's interest against the severity of the conflict and the interests of the judicial system. Instead, it applied the wrong legal standard, disqualifying original counsel because it assumed that disqualification was required if the attorney would be called to testify in a hearing to suppress evidence.

Disqualification, however, is not mandated by this potential conflict. *See Taylor v. Grogan,* 900 P.2d 60, 63 (Colo.1995) ("[M]ere violation of a disciplinary rule does not automatically result in disqualification. The critical question is whether the litigation can be conducted in fairness to all parties."). While counsel may have used dubious judgment in creating a potential conflict by acting as affiant for his own motion, this conduct was not sufficient to be considered, *ipso facto,* a threat to the integrity of the judicial system.

Moreover, the record indicates that the trial court's questioning was conducted without prior notice to defendant, and consisted of cursory and confusing questions which elicited yes and no answers. The inquiry was sufficiently nebulous that defendant had no meaningful opportunity to declare any preferences.

### B.

In the context of a trial, the erroneous disqualification of a defendant's counsel cannot be considered harmless. *Anaya v. People, supra.* Consequently, defendant claims that his guilty plea must be vacated. As pertinent here, however, the *Anaya* deci-

sion did not address the applicability of this automatic-reversal rule to a plea of guilty, and there is little in that opinion which indicates the court's direction on that issue. We distinguish the rationale put forth in *Anaya,* and conclude that a guilty plea need not be vacated after improper disqualification of original counsel if defendant acquiesces to representation by replacement counsel for entry of his plea.

In *Anaya,* the supreme court provided two rationales that weigh heavily in favor of requiring automatic reversal.

First, in the context of trial, it is extremely difficult to show prejudice because "there is no way to know whether the character of the proceedings would have changed, whether counsel would have made different decisions, or whether the defense strategy would have been different if counsel of choice had represented the defendant." *Anaya v. People, supra,* 764 P.2d at 782.

In the context of a guilty plea, however, it is, irrelevant that advice may have been different under another counsel. "[W]hen the defendant ... admits his guilt, he ... assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts." *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 1450, 25 L.Ed.2d 763, 775 (1970).

A defendant can successfully attack a plea only if he can prove serious dereliction on the part of counsel sufficient to show that his plea was not a knowing and intelligent act. *McMann v. Richardson supra; see also People v. White,* 182 Colo. 417, 514 P.2d 69 (1973). The standard for evaluation is not whether counsel's advice was, retrospectively, correct, but whether that advice was within the range of competence demanded of attorneys in criminal cases. *See Perez v. People,* 745 P.2d 650 (Colo.1987).

The supreme court's second rationale was that allowance for harmless error would render meaningless defendant's qualified constitutional right to counsel of choice because there would be no remedy for a deprivation of that right. *Anaya v. People, supra,* 764 P.2d at 782 ("[T]he right [to choice of coun-

sel] reflects constitutional protection of the defendant's free choice independent of concern for the objective fairness of the proceeding.").

■ However, constitutional rights are not necessarily rendered meaningless simply because there is no remedy for their deprivation. Rather than rendering the right meaningless, a valid plea of guilty constitutes a forfeiture of the right. A guilty plea waives all nonjurisdictional objections, including fundamental, Sixth Amendment constitutional rights. *See Waits v. People,* 724 P.2d 1329 (Colo.1986) (Erickson, J., concurring); *People v. Lesh,* 668 P.2d 1362 (Colo.1983).

Thus, a defendant has no right to raise a constitutional claim after a guilty plea when that claim does not relate directly to the adequacy of the plea:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea....

*Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235, 243 (1973) (improperly selected grand jury); *see also People v. Drake,* 785 P.2d 1257 (Colo.1990).

The rationale for allowing a defendant to attack the plea based on it being involuntary or unintelligent is that the plea itself effects a waiver of fundamental rights and must, therefore, be knowingly, intelligently, and voluntarily made in order to be a valid plea. *People v. Pozo,* 746 P.2d 523 (Colo.1987).

■ Since the underlying reasons for the bright line rule that presumes prejudice in a trial context do not apply in the context of a guilty plea, the trial court's erroneous disqualification of counsel here does not require that defendant's guilty plea be vacated, absent evidence that the plea was involuntary or unintelligently made.

## C.

Defendant asserts that a guilty plea made after an erroneous disqualification of counsel is inherently involuntary. We disagree.

■ Defendants have a constitutional right to counsel in regard to entry of a guilty plea. *People v. Roybal,* 618 P.2d 1121 (Colo. 1980); *People v. McIntosh,* 695 P.2d 795 (Colo.App.1984); *see also* Crim.P. 11. And, case law on the right of the accused to defend *pro se* suggests that resistance by a defendant to representation by a particular attorney could render the actions of counsel on behalf of his/her client invalid. *See Key v. People,* 865 P.2d 822 (Colo.1994) (right to self representation is not subject to a harmless error analysis).

> An unwanted counsel 'represents' the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Faretta v. California,* 422 U.S. 806, 821, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562, 573 (1975).

■ Thus, regardless of the competence of counsel, there is a potential that an accused who pleads guilty after having been improperly denied his choice of counsel may not have been provided constitutionally adequate counsel for entry of a voluntary plea. *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984) ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."). Under such circumstances, the plea would be involuntary and vacated.

It remains, however, that a defendant can, by his actions, acquiesce in the replacement of his original counsel and negate the erroneous disqualification. *Cf. Anaya v. People, supra,* 764 P.2d at 781 ("[T]here is no indication that Anaya acquiesced in his representation by the attorney who replaced his original counsel of choice."). Unless defendant can show that he did not acquiesce to representation for his plea, replacement counsel is no longer "unwanted" counsel. Acquiescence renders the replacement representation *"his*

representation," and any erroneous disqualification of original counsel becomes moot.

■ "Acquiescence" is "some act, not deliberately intended to ratify a former transaction known to be voidable, but recognizing the transaction as existing and intended, in some extent at least, to carry it into effect, and to obtain or claim the benefits resulting from it." *Black's Law Dictionary* 24 (6th ed. 1990). Acquiescence can occur when a party reads and signs a waiver if there is no indication that the waiver is not voluntary, *People v. Simms,* 185 Colo. 214, 523 P.2d 463 (1974), or when a party requests one procedure, but participates without objection in another. *Johnson v. Neel,* 123 Colo. 377, 229 P.2d 939 (1951) (holding that defendant acquiesced to bench trial after requesting jury trial).

■ When a guilty plea is entered, the court specifically questions the defendant to determine whether the plea is entered with the advice of an acceptable counsel. *See* Crim.P. 5 and 11. Here, in accordance with that procedure, the trial court found, with record support, that defendant acknowledged that he was completely satisfied with the legal advice and services of replacement counsel and that he did not wish the opportunity to consult with any other counsel to submit the plea. Defendant also signed a written advisement form stating his satisfaction with replacement counsel.

Moreover, the record indicates that, although initially defendant sought reinstatement of his original counsel after that attorney was improperly replaced, once his C.A.R. 21 petition was denied, defendant did not protest further. To the contrary, defendant specifically requested that replacement counsel submit a guilty plea for him and communicate and negotiate for him with both the prosecutor and his father's attorney.

We hold, therefore, on this record, that defendant acquiesced in representation by replacement counsel for the purpose of entry of his guilty plea.

## II.

Defendant makes two additional claims that his guilty plea was involuntary. First, he contends that the plea was the result of ineffective assistance of replacement counsel and, second, that the plea was urged upon him by replacement counsel for a coercive reason. Although these claims, in practical effect, resulted from disqualification of original counsel and we have determined that defendant acquiesced in his representation by replacement counsel, nevertheless, either of these two claims, if established, would be sufficient to support a finding that the plea was involuntary. Thus, we evaluate them, but reject both.

## A.

Defendant contends that ineffective assistance of replacement counsel rendered his guilty plea involuntary. He argues that his replacement counsel conducted inadequate pre-trial investigation and that, rather than preparing for trial, she insisted that defendant plead guilty.

■ For a defendant to prevail on a claim of ineffective assistance of counsel after a guilty plea, he must prove serious dereliction on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act, *see McMann v. Richardson, supra,* and that there was a reasonable probability that, but for the counsel's unprofessional errors, he would not have pled guilty. *People v. Pozo, supra.*

■ While counsel has a duty to "make reasonable investigations . . . or to make a reasonable decision that makes particular investigations unnecessary," *Hutchinson v. People,* 742 P.2d 875, 881 (Colo.1987), these decisions may be influenced or determined by the defendant's own statements or actions. *Strickland v. Washington, supra.* And, as noted previously, it is irrelevant, under a guilty plea, that advice may have been different under original counsel. *McMann v. Richardson, supra.* Furthermore, counsel's performance must be evaluated in the light of all circumstances, viewed at the time of the performance, *People v. Naranjo,* 840 P.2d 319 (Colo.1992), and judicial scrutiny of counsel's performance must be highly deferential. *People v. Fulton,* 754 P.2d 398 (Colo.App.1987).

■ Here, the record supports the trial court finding that replacement counsel was not ineffective. Specifically, the court found with record support that replacement counsel had reviewed discovery, consulted with original counsel concerning the prior investigation and possible defenses, discussed the strengths and weaknesses of the case with defendant, and informed defendant that the decision to enter a plea bargain or go to trial was his to make. The record also supports the conclusion that defendant directed that replacement counsel submit a plea offer to the prosecutor. Moreover, as noted previously, defendant completed a written questionnaire and was orally questioned to assure the court that he understood the elements of the crime charged, his constitutional rights, and the potential sentence for a conviction.

■ Since we conclude that defendant has not proven that counsel's conduct was constitutionally deficient, we need not address the issue of prejudice. However, we do note that defendant produced no evidence in the Crim.P. 35(c) hearing as to any willing witness or the substance of his or her testimony. *See People v. Chambers* 900 P.2d 1249 (Colo.App.1994). Without some such showing, defendant cannot demonstrate that additional investigation would have prompted a different plea.

## B.

Finally, defendant contends that his plea was involuntary because it resulted from coercion. Defendant argues that he was coerced into the plea both because it was urged upon him by his replacement counsel and because it included the dismissal of murder charges against his ailing father. We disagree.

■ Plea negotiation which includes charges against a loved one does not necessarily render a plea bargain the product of coercion. Such a plea can be voluntary, especially when there is no question of threats by the prosecutor, the defendant's perception of the potential effect on other persons is accurate, and the defendant initiated the negotiation and agreement. *People v. Duran,* 179 Colo. 129, 498 P.2d 937 (1972).

■ Here, there was no question of either threats of prosecution of the father being used to induce the defendant's guilty plea or concerning the accuracy of defendant's understanding of the situation. Both father and son had been charged with murder, and, according to both defense counsel, there was substantial evidence against both.

While defendant claims that his original counsel was committed to going to trial, the record also shows that defendant initiated the negotiations that led to the plea agreement. Moreover, he completed a written plea questionnaire and agreed at the providency hearing that the plea was both knowing and voluntary. In addition, defense counsel testified at the Crim.P. 35(c) hearing that, while defendant was motivated in part by his concern for his father, he was motivated also to plead guilty to a lesser offense by the strengths and weaknesses of the case against him.

The order is affirmed.

CASEBOLT and ROY, JJ., concur.