In re The PEOPLE of the State of Colorado, Plaintiff,

v.

Robert HARLAN, Defendant.

No. 01SA356.

Supreme Court of Colorado,
En Banc.

Sept. 16, 2002.

Rehearing Denied Oct. 7, 2002.*

---

* Justice KOURLIS and Justice RICE would grant the petition; Justice BENDER and Juustice

COATS do not participate.

Robert S. Grant, District Attorney, Steven L. Bernard, Assistant District Attorney, Brighton, Colorado, Attorneys for Plaintiff.

David S. Kaplan, Colorado State Public Defender, Kathleen A. Lord, Chief Appellate Deputy, Denver, Colorado, Attorneys for Defendant.

Justice MARTINEZ delivered the Opinion of the Court.

In this original proceeding, petitioner Robert Harlan seeks to vacate the district court's order disqualifying his longtime counsel of choice. The district court disqualified Harlan's counsel of choice on an oral motion by the People during post-conviction proceedings. Harlan contends that the district court abused its discretion in ordering disqualification. We issued a rule to show cause and now make the rule absolute.

After reviewing the relevant facts and procedure, we review the principles governing disqualification. As our discussion indicates, a determination regarding disqualification encompasses several considerations, including a defendant's right to continued representation by his counsel of choice, his right to conflict-free counsel, his right to waive the right to conflict-free counsel, and the public interest in preserving the integrity of the judicial process. Our discussion reveals that in *Rodriguez v. District Court*, 719 P.2d 699 (Colo.1986), we articulated a balancing test that encompasses these considerations in determining whether disqualification is necessary and proper. Because our determination that disqualification was not warranted in this case turns on the nature of the alleged potential conflict of interest, we discuss the alleged conflict in detail. Finally, applying the *Rodriguez* balancing test to this case, we conclude that the district court abused its discretion when it ordered disqualification of Harlan's counsel of choice.

## I. Facts & Procedure

After a jury trial, Harlan was found guilty of first-degree murder, two counts of attempted murder, second-degree kidnapping, and first-degree assault. The jury returned a sentence of death on the capital murder conviction. On April 20, 2001, we issued a mandate affirming the sentence and conviction and instructed the district court to vacate the sentence for one attempted murder count. *See People v. Harlan*, 8 P.3d 448 (Colo.2000).

At the time we issued our mandate, there was a motion pending in the district court. That motion, captioned Motion to Vacate the Death Sentence Due to Juror's Use of the Bible During Penalty Phase Deliberations ("the Bible Motion"), was filed by Harlan in 1995 upon counsel's discovery that jurors had allegedly brought Bibles into their penalty phase deliberations. The trial court did not consider the Bible Motion before Harlan's notice of appeal had to be filed and we did not address it on appeal. Upon our issuance of the mandate, the People took the position that the Bible Motion was no longer pending. The People's procedural position, along with the merits of the Bible Motion, were being briefed by counsel when the People successfully moved to disqualify Harlan's counsel for all purposes. It is the district court's order disqualifying Harlan's counsel that is the subject of this C.A.R. 21 proceeding. Because the disqualification order was appealed immediately, all matters, including the Bible Motion, were effectively stayed pending our resolution of this C.A.R. 21 proceeding.

Prior to the hearing at which the district court disqualified Harlan's counsel, and before Harlan filed a Crim. P. 35(c) motion, he filed a motion seeking the appointment of alternate defense counsel (ADC) to investigate and present any claims of ineffective assistance of counsel. This motion was filed notwithstanding the fact that no allegations had been made that Harlan's counsel of choice was ineffective. At a hearing on August 2, 2001, the district court agreed that conflict-free ADC should be appointed to represent Harlan to review any possible ineffective assistance of counsel claims that might be asserted at some time in the future. At that same hearing, the People asserted that the public defender should no longer be involved with the case. The district court rejected the People's assertion and scheduled another hearing for August 20, 2001 for the appointment of conflict-free ADC. Finally, the district court notified counsel that all future matters would be heard by another division and ordered that any motions to be heard at the August 20 hearing be filed by August 13.

After the August 13 deadline passed, the People filed two pleadings, one of which asserted that the public defender should be required to withdraw as counsel unless Har-

lan agreed to waive any claims of ineffective assistance of counsel.[1] The People based this pleading on what it contended was the certainty that Harlan would assert ineffective assistance of counsel claims against his counsel of choice, which would create an impermissible conflict of interest. The People rely on this same argument in this C.A.R. 21 proceeding. The People did not file a motion to disqualify Harlan's counsel.

At the August 20 hearing, the People orally requested that the district court disqualify Harlan's counsel for all purposes. The People made this request notwithstanding the fact that only two defense matters were set to be heard on August 20, neither of which was a motion to disqualify counsel.[2] Over defense counsel's objection, the court heard argument on the disqualification issue and ordered that Harlan's counsel be disqualified immediately. At the time of counsel's disqualification, there were two pending motions, the Bible Motion and Harlan's Combined Crim. P. 35(a) and 35(b) Motion. In disqualifying Harlan's counsel, the district court stated:

> I think having the Public Defender's office continue as Mr. Harlan's counsel in this case does create a tension, a significant one, in that he has the right to raise ineffective assistance of counsel issues, and likely those issues will be raised.... Although ineffective assistance of counsel claims haven't been raised yet, they likely will be raised. In fact, I expect them to. No one expects otherwise. And once those issues are raised, I think it puts Mr. Harlan and the Public Defender's office in a very difficult situation.

The district court did not advise Harlan of the nature of any potential conflict, nor did it advise Harlan of his right to waive any potential conflict of interest, although it stated

that it assumed that Harlan was prepared to waive his right to conflict-free counsel. The district court then appointed interim counsel, who continues to act only as interim counsel.

After the district court's ruling, Harlan's counsel filed a motion to reconsider. That motion amended Harlan's request regarding the scope of representation he was seeking from his counsel of choice. Specifically, the motion to reconsider asked only that Harlan be permitted to retain his counsel of choice for the limited purposes of litigating the Bible Motion and the Crim. P. 35(a) Motion.[3] The district court denied the motion to reconsider. Harlan's counsel filed the present C.A.R. 21 motion, requesting a rule to show cause. We issued the rule to show cause and the matter has been fully briefed. We now make the rule absolute and hold that the district court improperly disqualified Harlan's counsel of choice.

## II. Disqualification of Counsel: Controlling Principles

### A. Disqualification: General Concepts

 Very generally, disqualification of a defendant's counsel of choice is utilized to remedy situations in which continued representation would in some way tarnish the judicial process. *See generally Taylor v. Grogan*, 900 P.2d 60 (Colo.1995). In determining whether disqualification is warranted "[t]he critical question is whether the litigation can be conducted in fairness to all parties. Disqualification should not be imposed unless the claimed misconduct in some way 'taints' the trial or legal system." *Id.* (quoting *Fed. Deposit Ins. Co. v. Isham*, 782 F.Supp. 524, 528 (D.Colo.1992)). We have held that an important consideration in determining whether disqualification is necessary is the "presence of a real and substan-

---

1. The two pleadings filed by the People after the August 13 deadline were: (1) Points and Authorities Concerning the Appointment of Post–Conviction Counsel for the Defendant, and (2) Brief in Support of the Prosecution's Position that a Defendant Whose Death Sentence Has Been Affirmed on Appeal Cannot File Post–Conviction Motions Pursuant to Rule 35(a) or 35(b).

2. The two matters set for the August 20 hearing were: (1) Harlan's motion to vacate the attempt-

ed murder conviction pursuant to this court's April 20 mandate, and (2) the appointment of conflict-free counsel to investigate and, if appropriate, present any ineffective assistance of counsel claims.

3. Although Harlan filed a Combined Crim. P. 35(a) and 35(b) Motion, Harlan's counsel requests only to represent Harlan on the Crim. P. 35(a) Motion.

tial conflict that place[s] the defense attorney in a situation inherently conducive to and productive of divided loyalties." *People v. Castro,* 657 P.2d 932, 945 (Colo.1983). Thus, we have found a "substantial" conflict warranting withdrawal where a public defender was appointed to represent two defendants with conflicting interests. *Allen v. Dist. Ct.,* 184 Colo. 202, 204, 519 P.2d 351, 352 (1974). Similarly, the United States Supreme Court has recognized that the trial court could require disqualification of counsel who represented codefendants in a conspiracy case where one defendant was offered a plea agreement that would make him a witness against the other. *Wheat v. United States,* 486 U.S. 153, 160, 162, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

■■ Disqualification is a severe remedy that should be avoided if possible. "Courts should impose the least severe sanctions necessary to remedy improper conduct by the parties," *People v. Palomo,* 31 P.3d 879, 885 (Colo.2001), and should "shape a remedy which will assure fairness to the parties and the integrity of the judicial process." *People v. Garcia,* 698 P.2d 801, 806 (Colo.1985). As a result, disqualification is only proper when it appears reasonably necessary to ensure "the integrity of the fact-finding process, the fairness or appearance of fairness at trial, the orderly or efficient administration of justice, or public trust or confidence in the criminal justice system." *Id.* at 806.

■■ In *Rodriguez v. District Court,* 719 P.2d 699 (Colo.1986), we articulated a balancing test for determining whether disqualification is proper. *Rodriguez* directs that a court must "evaluate the defendant's preference for particular counsel, ... and the public's interest in maintaining the integrity of the judicial process as well as the nature of the particular conflict of interest involved." *Rodriguez,* 719 P.2d at 706–07. However, where the circumstances of the case do not rise to the level of a substantial conflict, waiver may be acceptable and disqualification inappropriate. In *Rodriguez,* the office of the public defender had previously represented one of the prosecution's witnesses. Nonetheless, the possible confidential information gained by the public defender's office

did not outweigh the defendant's preference for continued representation by the public defender. *Id.* at 707–08. We have also held that a prosecuting attorney's intent to file a grievance against the public defender was not a conflict which precluded waiver of conflict-free representation by the defendant. *People v. Martinez,* 869 P.2d 519, 526 (Colo. 1994).

■■ Additionally, a trial court may not disqualify counsel on the basis of speculation or conjecture; disqualification may only occur after facts are alleged that demonstrate the potential violation of a rule of professional conduct. *People ex rel. Woodard v. Dist. Ct.,* 704 P.2d 851, 853 (Colo.1985). The burden of establishing that disqualification is proper is on the moving party. That burden is only met when the motion to disqualify sets forth specific facts that "point to a clear danger that either prejudices counsel's client or his adversary." *Id.*

■■ Trial courts have broad discretion in determining whether disqualification is necessary; we review a district court's order regarding disqualification under an abuse of discretion standard. *People v. Dist. Ct.,* 951 P.2d 926, 931 (Colo.1998).

B. Disqualification: The Specific Concepts of the Right to Continued Representation by Counsel of Choice, the Right to Conflict–Free Counsel, and Waiver of the Right to Conflict–Free Counsel

The general concepts underlying disqualification encompass several more specific concepts, each of which is implicated in this case and each of which is reflected in the *Rodriguez* balancing test. More specifically, a disqualification determination involves consideration of a defendant's right to continued representation by counsel of choice, a defendant's right to conflict-free counsel, and a defendant's right to waive the right to conflict-free counsel. In this case, Harlan asserts that he is entitled to continued representation by his counsel of choice for the purposes of litigating the Bible Motion and the Crim. P. 35(a) Motion. He also asserts that he is willing to waive any potential conflict arising from representation by his coun-

sel of choice on these two motions, including a waiver of ineffective assistance of counsel claims that might arise from the litigation of these two motions. Finally, he argues that the public's interest in maintaining the integrity of the judicial process is not outweighed by his right to continued representation by his counsel of choice.

### 1. Right to Continued Representation by Counsel of Choice

■ The right to continued representation by counsel of choice must be distinguished from an asserted right to have particular counsel of choice appointed. The present case involves the former, namely a defendant who desires to have continuing representation by his counsel of choice, who has represented him over the course of a complex, seven-year death penalty case. Harlan does not contend that his right to *continued* representation by court-appointed counsel equates to a right to *choose* that court-appointed counsel.

■ While there is no Sixth Amendment right for an indigent defendant to choose his appointed counsel, that defendant is "entitled to continued and effective representation by court-appointed counsel in the absence of a demonstrable basis in fact and law to terminate that appointment." *Williams v. Dist. Ct.*, 700 P.2d 549, 555 (Colo. 1985). As a result, once counsel is appointed, the attorney-client relationship "is no less inviolable than if the counsel had been retained by the defendant." *People v. Isham*, 923 P.2d 190, 193 (Colo.Ct.App.1995). There is thus a presumption in favor of a defendant's choice of counsel. *Tyson v. Dist. Ct.*, 891 P.2d 984, 990 (Colo.1995) (citing *Wheat*, 486 U.S. at 163–64, 108 S.Ct. 1692). The presumption extends to indigent defendants: A defendant's desire for continued representation by a court-appointed public defender is "entitled to great weight." *Rodriguez*, 719 P.2d at 707. However, the presumption may be overcome by a showing of an ethical conflict or a potential for conflict. *Id.*

Based on these principles, the People's contention that indigent defendants are not entitled to choose court-appointed counsel is irrelevant to the issue before us. While it is a correct statement of law that an indigent defendant has no right to *choose* his court-appointed counsel, *see, e.g., People v. Shook*, 186 Colo. 339, 527 P.2d 815 (1974), this principle is not implicated in the present case. In contrast, the issue presented in this case is whether Harlan may *continue* to be represented by his longtime counsel of choice. As noted above, an indigent defendant has a presumptive right to continued representation by court-appointed counsel absent a factual and legal basis to terminate that appointment. *Williams*, 700 P.2d at 555. Because the issue presented in this case is whether Harlan may continue to be represented by his current counsel, and not whether he may choose his counsel, this argument by the People, and the case law cited to support the argument, is inapposite.

We find that Harlan has a presumptive right to continued representation by his counsel of choice for litigation of the Bible Motion and the Crim. P. 35(a) Motion. However, this conclusion does not end our inquiry. Pursuant to *Rodriguez*, this presumption must be weighed alongside Harlan's right to conflict-free counsel, his right to waive that right to conflict-free counsel, and the interest of the public in maintaining the integrity of the judicial process.

### 2. Right to Conflict–Free Counsel and Waiver

■ In addition to the presumptive right to continued representation by counsel of choice, a defendant has a right to conflict-free counsel. In general, counsel becomes encumbered with a conflict when her effectiveness is impaired or when her "ability to champion the cause of the client becomes substantially impaired." *Rodriguez*, 719 P.2d at 704, 706.

■ Conflicts are categorized as either actual or potential. We have described an actual conflict of interest as one that is "real and substantial." *See Castro*, 657 P.2d at 944. A potential conflict has been described as "possible," "nascent," and as one that "in all probability will arise." *See Wheat*, 486 U.S. at 160, 162, 108 S.Ct. 1692; *Allen*, 184 Colo. at 206, 519 P.2d at 353. Our

precedent makes clear that categorizing a conflict as "potential" implies a likelihood and a level of risk that the conflict will materialize. *Allen,* 184 Colo. at 206, 519 P.2d at 353. Because a "potential" conflict may thus encompass a range of possible scenarios, determinations regarding the potentiality of the conflict, the waivability of the conflict, and the requirement of an express, valid waiver are necessarily fact-specific and therefore must be made on a case-by-case basis.

■ The right to conflict-free counsel is encompassed within the right to effective assistance of counsel. *Martinez,* 869 P.2d at 524 (citing *Holloway v. Arkansas,* 435 U.S. 475, 483–84, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). That counsel must be conflict-free ensures that a defendant will receive the zealous advocacy to which he is entitled. *Murphy v. People,* 863 P.2d 301, 304 (Colo. 1993).

■ Although a defendant is entitled to conflict-free counsel, he may waive that right in many circumstances. *Castro,* 657 P.2d at 944. In order to waive the right to conflict-free counsel, a defendant must be fully advised of the existing or potential conflict. *Martinez,* 869 P.2d at 525. A waiver is valid upon a showing that the defendant was "aware of the conflict and its likely effect on his counsel's ability to offer effective representation and that the defendant thereafter voluntarily, knowingly and intelligently relinquished his right to conflict-free representation." *Castro,* 657 P.2d at 946. Waiver may be permitted even where the defendant "will receive representation which is less effective than the representation which could be provided by conflict-free counsel." *Rodriguez,* 719 P.2d at 706.

■ Although a defendant may waive the right to conflict-free counsel in many circumstances, the right to waive is limited. Limitations on a defendant's right to waive conflict-free counsel are imposed in circumstances where "considerations other than a defendant's desires are given controlling significance. These considerations relate to the paramount necessity of preserving public confidence in the integrity of the administration of justice." *Martinez,* 869 P.2d at 527.

In determining what circumstances preclude a defendant's waiver of the right to conflict-free counsel, we have employed the *Rodriguez* balancing test to determine whether a defendant's desire to continue to be represented by his counsel of choice significantly undermines the public confidence in the impartiality and fairness of the judicial process because of the nature of the conflict involved. *Rodriguez,* 719 P.2d at 706.

In sum, the principles underlying the right to continued representation by counsel of choice, the right to conflict-free counsel, and a defendant's prerogative to waive the right to conflict-free counsel are interrelated. All three rights are considered and balanced, alongside the public's interest in maintaining the integrity of the judicial process, in determining whether a particular defendant will be permitted to continue to be represented by counsel of choice, or whether counsel should be disqualified, given the facts of a particular case. *See Rodriguez,* 719 P.2d at 706–07.

### III. The Disqualification Determination in this Case

The People contend that an actual conflict of interest between Harlan and his counsel of choice compels the disqualification in this case. The People argue that the possibility, which the People describe as a "historical certainty," that Harlan will assert ineffective assistance of counsel claims against his counsel of choice creates an impermissible conflict of interest that mandates disqualification of Harlan's counsel of choice for all purposes. The People point to the defense motion seeking the appointment of conflict-free ADC to investigate and present any claims of ineffective assistance of counsel as evidence that an actual conflict exists, which mandates disqualification of Harlan's counsel of choice.

Alternatively, the People argue that there is at least a potential conflict of interest in this case because death penalty defendants frequently assert ineffective assistance of counsel claims. The People thus conclude that the public defenders may not continue to represent Harlan and simultaneously call into question their own effectiveness at trial and on appeal. The People contend that the

mere investigation of a possible ineffective assistance of counsel claim at this stage in the proceedings would undermine public confidence in the criminal justice system, as well as confuse Harlan by calling into question whether he should trust his counsel of choice.

■ Although we disagree with the People's argument that there is an actual conflict in this case, we do agree that the disqualification determination turns on the nature of the alleged conflict between Harlan and his counsel of choice. We thus turn to a more detailed discussion of the nature of the alleged conflict in this case before reaching a determination regarding disqualification.

### A. The Nature of the Alleged Conflict of Interest

■ Harlan has not alleged that his counsel of choice provided ineffective assistance. Rather, he only asks for the appointment of counsel to investigate whether there is a basis for asserting such claims. This case is therefore distinguishable from those cases in which specific allegations of ineffective assistance of counsel, usually asserted in post-conviction pleadings, have created an actual conflict of interest. *See, e.g., Murphy,* 863 P.2d at 304 (district court created actual, impermissible conflict of interest when it appointed trial counsel to represent defendant in post-conviction proceedings alleging ineffective assistance of counsel); *McCall v. Dist. Ct.,* 783 P.2d 1223, 1228 (Colo.1989)(actual conflict of interest for court to appoint public defender from the appellate division to represent defendant in post-conviction proceedings alleging ineffective assistance of counsel against deputy public defender who served as trial counsel); *Riley v. Dist. Ct.,* 181 Colo. 90, 94, 507 P.2d 464, 466 (1973)(defense attorneys must be allowed to withdraw when defendant alleges ineffective assistance of counsel because to deny the motion to withdraw would create an actual conflict of interest).

Additionally, Harlan's counsel filed the motion for appointment of ADC to investigate potential ineffective assistance of counsel claims not because such claims will certainly be filed, but instead because of federally-imposed time restraints that may be implicated if Harlan later decides to file a federal habeas corpus petition.[4] Accordingly, the alleged conflict of interest is only potential.

■ The distinction between actual and potential conflicts is significant because it may, in some circumstances, impact the necessity of waiver. While an actual conflict may or may not be waivable under the facts of a particular case, if a court finds that an actual conflict is waivable, it must obtain an express, valid waiver of the conflict from the defendant. Similarly, a potential conflict may or may not be waivable. However, in contrast to an actual conflict, there are some circumstances in which a potential conflict will not require a waiver. The category of "potential conflict" encompasses a variety of possible scenarios, ranging from a remote possibility that the conflict may arise to a high probability that the conflict will arise. In those cases in which the potential conflict is remote, waiver may not be required at all. We need not determine whether the potential conflict here requires an express waiver because Harlan has not advanced that argument. Instead, Harlan has offered to waive the potential conflict. Therefore, we proceed to consider whether the potential conflict in the case is waivable. We determine that it is.

■ We base our determination that the alleged potential conflict is waivable on several facts. First, we find it important that no claims of ineffective assistance of counsel have been filed. Second, it is significant that Harlan's counsel of choice explained that she filed the motion for appointment of ADC, at least in part, to preserve Harlan's state and federal post-conviction rights. Finally, the limited scope of the representation that Har-

---

4. Harlan's counsel asserts that she filed the motion for ADC not because an actual conflict exists, but instead because of the one-year deadline set forth in the federal Antiterrorism and Effective Death Penalty Act (AEDPA) for filing all post-conviction claims. *See generally* 28 U.S.C. § 2244 (2000). Based on the AEDPA, Harlan's counsel states that she filed the motion for appointment of ADC "out of an abundance of caution to ensure that conflict-free counsel would have adequate time to investigate any possible ineffective assistance of counsel claim prior to the expiration of the one-year period."

lan seeks from his counsel of choice, which is representation on two pending motions, supports our determination that any potential conflict is waivable.

Having determined that Harlan has a presumptive right to continued representation by his counsel of choice and that the potential conflict in this case is waivable given the limited scope of the representation that Harlan seeks from his counsel of choice we now turn to an application of the *Rodriguez* balancing test and conclude that disqualification in this case was improper.

### B. Application of the *Rodriguez* Balancing Test

■ The application of the *Rodriguez* balancing test reveals that the district court's disqualification in this case was improper and an abuse of discretion. As noted, the first *Rodriguez* factor, the presumption in favor of Harlan's counsel of choice is strong; he has been represented by his counsel of choice for the seven years of this complex death penalty litigation. Because this presumption has not been rebutted, this factor weighs heavily against disqualification.

The second *Rodriguez* factor, the public's interest in · maintaining the integrity of the judicial system, is not compromised in this case for several reasons. First, Harlan's counsel of choice proceeded in a manner consistent with her ethical duties to the court, to her client, and to the judicial system. Once counsel is aware of a potential conflict of interest, we have stated that she must

> inform the client of the nature of the conflict and, in plain terms, describe the specific ways in which the conflict may affect the attorney's ability to effectively represent the defendant at various stages of the pending litigation. The defense attorney should place on record the potential conflict of interest and further advise the court that as complete a disclosure as possible has been made to the defendant.

*Castro,* 657 P.2d at 946, n. 10. In this case, Harlan's attorney filed a motion for appointment of conflict-free ADC to investigate and possibly present claims of ineffective assistance of counsel. The filing of this motion

did not, as contended by the People, in and of itself create a conflict; several factors indicate that this motion mitigated any potential conflict in a way that precludes disqualification. Counsel made representations to the district court at the August 20 hearing that she had informed Harlan of the conflict and that he was willing to waive his right to conflict-free counsel. In addition, she suggested that the court appoint independent counsel to caution Harlan about the conflict and advise the court as to the validity of his waiver. Finally, in her motion to reconsider, Harlan's counsel of choice further limited her request to continue to represent Harlan to the Bible Motion and the Crim. P. 35(a) Motion, both of which involved the sentencing phase of the trial and neither of which raised ineffective assistance of counsel claims. These factors demonstrate Harlan's counsel of choice's conscientious adherence to the rules of professional conduct.

Additionally, Harlan's counsel contends that the motion for appointment of ADC was filed to preserve her client's state and federal post-conviction rights. As such, the motion for appointment of ADC in this case, and the concomitant potential conflict of interest it embodied, is indistinguishable from the same potential conflict that is presented in the many other cases in which such a motion is filed to preserve future post-conviction rights. In proceeding to preserve such claims for her client, as is done in many other cases, Harlan's counsel of choice cannot be said to have acted in a way that undermines the public's interest in maintaining the integrity of the judicial process. In contrast, Harlan's counsel of choice, by proceeding in a manner that seeks to preserve important rights of her client and that is consistent with standard practices, has acted in a manner consistent with fostering continued public confidence in the integrity of the judicial process.

Taken together, we view these factors as tending to further public confidence in the judicial process, not to diminish it, as is argued by the People. In short, the People did not meet their burden of demonstrating that a clear danger of prejudice exists to either Harlan or the state. *Woodard,* 704

P.2d at 853. This *Rodriguez* factor thus weighs heavily against disqualification.

The final *Rodriguez* factor, the nature of the conflict involved, also weighs against disqualification. Importantly, the conflict in this case is not actual but is only potential. To date, there has been no allegation of ineffective assistance of Harlan's counsel of choice. Additionally, the alleged conflict of interest is mitigated by counsel's motion for the appointment of ADC to investigate and possibly present any future ineffective assistance of counsel claims. Moreover, counsel further limited her request to continue to represent Harlan in her motion to reconsider when she requested that she be permitted to continue as Harlan's counsel only as to the Bible Motion and the Crim. P. 35(a) Motion. This request to limit her representation further mitigates and diminishes any conflict of interest that may arise in the future. Finally, as stated above, the alleged potential conflict in this case is waivable. Accordingly, when balanced against each other, the three *Rodriguez* factors compel our determination that the district court abused its discretion in disqualifying Harlan's counsel of choice.[5]

### C. Directions on Remand

In this case, the district court proceeded on the basis that Harlan would waive his right to conflict-free counsel. As a result, that court did not advise Harlan of either his right to conflict-free counsel or his right to waive that right to conflict-free counsel and, thus, determine whether Harlan in fact waives his right to conflict-free counsel.

Accordingly, on remand, the district court should engage in such advisement and make a determination regarding the effectiveness of Harlan's waiver. The district court may, in its discretion, appoint independent counsel to assist it in making this determination. If

Harlan in fact waives his right to conflict-free counsel for the litigation of these two motions, the court shall accept the waiver. We have accepted a defendant's waiver of the right to conflict-free counsel in situations that presented more immediate potential or actual conflicts than the alleged conflict presented here. *See, e.g., Tyson*, 891 P.2d at 991 (permitting waiver of right to conflict-free counsel where defense attorney represented husband and wife in criminal proceeding in which evidence was stronger against one person than against the other and where a plea agreement had been made to one of the defendants that entailed testifying against the co-defendant); *Martinez*, 869 P.2d at 528 (permitting waiver where conflict was based on defense counsel's prior representation of prosecution witness and prosecutor's decision to file grievance against defense counsel due to witness' allegations that they failed to appear because defense counsel told them it would be better for the defendant if they did not). Accordingly, an informed and knowing waiver by Harlan must be recognized.

However, if Harlan does not in fact waive his right to conflict-free counsel for litigation of the Bible Motion and the Crim. P. 35(a) Motion after proper advisement, the court may then properly order disqualification of his counsel of choice from representing him on these two motions.[6]

### IV. Conclusion

We make the rule absolute and direct the district court to conduct further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice RICE joins in the dissent.

Justice BENDER and Justice COATS do not participate.

---

5. At the August 20 hearing, the district court expressed concern that Harlan did not express a willingness to waive any ineffective assistance of counsel claims. The district court misconstrued the nature and scope of the waiver that would be required of Harlan. Under controlling law, Harlan is only required to waive ineffective assistance of counsel claims based on the waived conflict of interest. *See Tyson v. Dist. Ct.*, 891 P.2d 984, 990 (Colo.1995). The issue of Harlan's

right to assert ineffective assistance of counsel claims arising from post-conviction, conflict-free representation is not before us and we thus do not address it.

6. The court may do so without determining whether an express, valid waiver is required in this case because Harlan has never argued that the facts of this case are such that no waiver is required. See discussion, *supra*, at 880.

Justice KOURLIS dissenting:

In my view, the trial court in this case acted well within its discretion in concluding that a defendant's request for the appointment of alternative defense counsel to investigate ineffective assistance of previous counsel created an actual or potential conflict of interest with that previous counsel, which conflict could not be waived. Accordingly, I would uphold the trial court order disqualifying the Office of the Public Defender from any further representation of Robert Harlan and therefore respectfully dissent from the majority opinion.

## I.

On July 27, 2001, Harlan filed a Motion for the Appointment of Alternate Defense Counsel to Investigate and Present Claims of Ineffective Assistance of Counsel. The counsel to whom that motion referred was the public defender. The public defender had represented Harlan throughout all trial and appellate proceedings in the case to that point, and counsel stated in the motion that she would have "a conflict of interest vis-à-vis any claim of ineffective assistance of trial or direct appeal counsel." On August 2, 2001, the district court granted the motion and appointed alternate defense counsel to investigate any ineffectiveness of the public defender in the representation of Harlan. On August 20, 2001, on the Prosecution's motion, the trial court disqualified the public defender as Harlan's counsel.

The trial court stated, in pertinent part:

"Mr. Harlan is not prepared today to waive, hasn't been, and understandably so, any claims he might have to ineffective assistance of counsel. The Public Defender represented him at trial. I think that having the Public Defender's office continue as Mr. Harlan's counsel in this case does create a tension, a significant one, in that he has the right to raise ineffective assistance of counsel issues, and likely those issues will be raised ... On the one hand, as [the prosecutor] points out in his brief, Mr. Harlan will expect to have zealous representation by the Public Defender's office at the same time that he, through other counsel, is raising claims

that the Public Defender was not effective at trial in representing Mr. Harlan. I think that although it may not be an actual conflict at this juncture, it has the tendency to lead to being or potential for serious conflict. And when I consider that, and notwithstanding Mr. Harlan's request to have the Public Defender's Office continue to represent him, I believe that the existence of a serious potential for conflict and preventing that far outweighs what I think I perceive to be Mr. Harlan's desire to have a particular counsel representing him in post-conviction matters."

## II.

The law applicable to this inquiry is quite clear. First, we vest great discretion with the trial courts to make these determinations, and review their orders only for abuse of discretion. *See People ex rel. Peters v. Dist. Ct.*, 951 P.2d 926, 931 (Colo.1998).

Second, the trial courts are to make the decision by application of a balancing test. The facts of the particular case comprise the fulcrum of the balance. On the one side, the trial court is to place the defendant's preference for a particular counsel; and on the other, the public's interest in maintaining the integrity of the judicial process. *See Rodriguez v. Dist. Ct.*, 719 P.2d 699, 706–07 (Colo. 1986). Unlike the calculus applicable to the original appointment of counsel for an indigent defendant, when the defendant's choice carries little shrift, an indigent defendant does have the right to *continue* to be represented by his existing court-appointed counsel, absent some "demonstrable basis in fact or law to terminate that appointment." *Williams v. Dist. Ct.*, 700 P.2d 549, 555 (Colo. 1985).

This court has found conflicts of interest warranting disqualification of existing counsel in post-convictions proceedings when the client asserted that his counsel improperly advised him concerning a guilty plea (*See Murphy v. People*, 863 P.2d 301, 304–05 (Colo.1993); *Riley v. Dist. Ct.*, 181 Colo. 90, 507 P.2d 464, 466 (1973)) and when the defendant asserted ineffective assistance of one attorney within the same office at trial (*See*

*McCall v. Dist. Ct.,* 783 P.2d 1223, 1227–28 (Colo.1989)).

The trial court in this case relied upon *Rodriguez* and *People v. Isham,* 923 P.2d 190 (Colo.App.1995), *cert. denied.* In *Isham,* the trial court disqualified defense counsel when he filed an affidavit in support of a motion to suppress that would have required him to be a witness in the suppression hearing. The appellate court disagreed with the disqualification but elected not to overturn the trial court's order. *Isham,* 923 P.2d at 193. The appellate court held that neither the relatively minor conflict nor the public confidence in the integrity of the system required the disqualification of the public defender, but that a defendant's preference would necessarily give way when faced with "the paramount necessity of preserving the public confidence in the integrity of the administration of justice." *Id.* at 194 (quoting *People v. Martinez,* 869 P.2d 519, 527 (Colo.1994)).

### III.

The trial court here confronted a circumstance in which Harlan had himself requested and received the appointment of new counsel to investigate the effectiveness of his old counsel, the Office of the Public Defender. At the very least, by that motion, Harlan was stating to the court that he was looking for errors that his previous counsel might have committed that would undermine the outcome of the proceeding.

Whether Harlan filed the Motion because of time constraints under the federal Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244, or to preserve options for himself in attacking his conviction matters not. He did file the Motion, and was unwilling to waive his right to do so. By asserting the ineffectiveness or possible ineffectiveness of his counsel, he created what the trial court called a "tension" in his relationship with that counsel. On the one hand, he is arguing that his counsel is ineffective, and on the other hand, asking that same counsel represent him on a continuing basis. The reasons that led to the Motion do not dilute this tension. A policy that would require judges to examine each motion for individual motivations would undermine, among other things, important facets of the attorney-client relationship such as confidentiality and trust and as

such, we must take these Motions on their face.

We need not resolve here today whether such a request creates an actual conflict or a potential conflict. We need merely determine whether the trial court abused its discretion in concluding that either an actual or potential conflict existed. Our case law supports a conclusion that where the trial court determines that a conflict exists or may arise in the future, a motion for disqualification or withdrawal should be granted. *See Allen v. Dist. Ct.,* 184 Colo. 202, 519 P.2d 351, 353 (1974); *see also Wheat v. United States,* 486 U.S. 153, 161–62, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). More blatantly, we have held in the past that the filing of a motion that asserts ineffective assistance of counsel creates a circumstance in which "neither the law nor common sense" would suggest that the lawyer would continue to represent a client who asserts such incompetence. *Riley v. Dist. Ct.,* 181 Colo. 90, 507 P.2d 464, 466 (1973).

Here, the trial court concluded that such a paradox disserves the integrity of the system of justice, and I would uphold that conclusion. Indeed, in my mind, to hold otherwise would support an inference that the process is replete with gamesmanship: an inference completely at odds with public confidence in the system. For that reason, as well, I view the conflict as not susceptible to waiver. Harlan's choice was to file or not file the Motion for Appointment of Alternative Counsel. He chose.

### IV.

Because I believe that the trial court acted well within its discretion in granting the Prosecution's Motion to Disqualify the Office of the Public Defender following appointment of alternative defense counsel to investigate ineffective representation by that very office, I respectfully dissent from the majority opinion and would uphold the trial court order.

I am authorized to state that Justice RICE joins me in the dissent.