The PEOPLE of the State of Colorado ex rel. James J. PETERS, District Attorney In and For the EIGHTEENTH JUDICIAL DISTRICT, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF ARAPAHOE, State of Colorado, and the Honorable Jack F. Smith, One of the Judges Thereof, Respondent.

No. 97SA328.

Supreme Court of Colorado, En Banc.

Jan. 20, 1998.

is manifest.'').

James J. Peters, District Attorney, Eighteenth Judicial District, Brian K. McHugh, Deputy District Attorney, Eva E. Wilson, Chief Deputy District Attorney, Stephen M. Lee, Chief Deputy District Attorney, Englewood, for Petitioner.

Forrest W. Lewis, P.C., Forrest W. Lewis, Denver, for Respondents.

Justice BENDER delivered the Opinion of the Court.

The People brought this original proceeding under C.A.R. 21 seeking relief in the nature of mandamus to correct an order issued by the Arapahoe County District Court ("the district court") holding that the attorneys for a defendant in a first-degree murder case should not be disqualified on the basis of a conflict of interest. The district court held that no conflict of interest exists where the defendant's attorneys are members of a firm that includes an attorney who currently represents a prosecution witness and formerly represented in a separate matter a person identified by the defense as an alternate suspect. We issued a rule to show cause why the relief requested should not be granted. We hold that Rule 1.10(a) of the Colorado Rules of Professional Conduct, when read in conjunction with Rules 1.7(a) and 1.9(a), prohibits the defense attorneys' representation of the defendant in this case, and that the district court abused its discretion when it held that a conflict of interest did not exist. Accordingly, we make the rule absolute.

## I.

Ruben Aragon is charged with the first-degree murder of Norma Lopez. Shortly before her death, Lopez, acting as a government informant, successfully arranged a monitored purchase of heroin from Eugene Velarde. As a result, Velarde was arrested under a federal indictment for the distribution of a controlled substance. Lopez was killed several days after Velarde's arrest. Aragon's defense attorneys intend to present evidence at trial that Velarde, not Aragon, killed Lopez. The prosecution intends to present evidence that Aragon admitted to a fellow inmate, Patrick Hawkinson, that he killed Lopez. The prosecution obtained Hawkinson's promise to testify at Aragon's trial as a condition of Hawkinson's plea bargain in a separate criminal case.

In October of 1996, the district court appointed Michael Root, then a sole practitioner, to represent Aragon. Four months later, the district court appointed James Castle as co-counsel. At the time of this appointment, Castle was a partner in a three-member law firm not associated with Root.

On June 20, 1997, Root and Castle advised the district court of potential conflicts of interest concerning their continued representation of Aragon. The district court set the matter for hearing and appointed independent counsel to evaluate the potential conflicts, discuss these conflicts with Aragon, and report his findings to the court.

Testimony at the hearing revealed that on April 1, 1997, Root, Castle, and other attorneys formed the law firm of Castle, Gaass, Joyce, Root & Scherer, L.L.C. ("the firm"). Christopher Beasley, who previously had been "of-counsel" to Castle's former three-person firm since December of 1995, became a partner in the firm. Beasley formerly represented the alternate suspect, Velarde, and currently represents prosecution witness Hawkinson.[1] Beasley testified that he had not disclosed any client confidences of either Velarde or Hawkinson to Root or Castle, and that neither Root nor Castle had disclosed any client confidences of Aragon to him. Velarde took the stand at the hearing but invoked his privilege against self-incrimination and chose to stand mute, refusing to answer any questions including the prosecution's in-

---

1. Beasley testified that he represented Velarde in the federal trial on charges of distribution of heroin in the capacity of "second-chair" defense counsel. Beasley's representation of Velarde ended upon Velarde's conviction and did not continue through sentencing. Beasley represented Hawkinson in an unrelated state criminal case that culminated in the plea bargain in which Hawkinson agreed to testify to Aragon's jailhouse admission that he killed Lopez. Beasley continues to represent Hawkinson in various matters "not of public record."

quiry as to whether he was willing to waive the attorney-client privilege between himself and Beasley. Velarde's attorney was present at the hearing and indicated that Velarde "will not waive any privilege." Hawkinson was not present at the hearing.

■ Independent counsel advised the court that a conflict of interest existed between Aragon, on the one hand, and Root and Castle, on the other, but that the conflict was waivable upon Aragon's consent.[2] However, independent counsel reported that Aragon chose not to waive his right to conflict-free counsel. Root and Castle expressed no opinion as to whether a conflict existed but emphasized to the court that they wished to remain on the case and that they were certain that they could provide Aragon with zealous representation. The prosecution argued that the case presented a conflict of interest requiring disqualification of Root and Castle absent a waiver of conflict-free counsel by Aragon. The prosecution reasoned that Beasley was prohibited from representing Aragon and that this prohibition must be imputed to Root and Castle as members of Beasley's firm.

The district court determined that Root and Castle's representation of Aragon was consistent with the Colorado Rules of Professional Conduct and that Root and Castle could remain on the case without violating any ethical standards. Relying upon Chief Justice Directive 89–3,[3] the district court ruled that Root and Castle represent Aragon in their individual capacities and that the firm does not represent Aragon. The district court stated:

Where a private attorney is appointed to represent a defendant . . . the appointed attorney, not his or her law firm, is appointed. In the instant case, Mr. Root and Mr. Castle represent the defendant, not Mr. Beasley or the law firm of which the lawyers are now all partners.

The district court reasoned that because Root, Castle, and Beasley were not a "firm" for purposes of Castle and Root's appointment to Aragon's case, they were not a "firm" for purposes of imputed disqualification and any conflict between Beasley and Aragon could not be imputed to Root and Castle.

The district court emphasized that there was no evidence that an improper exchange of confidences had occurred between Root, Castle, and Hawkinson,[4] and that the "ethics of the legal profession" acted as a natural "ethical wall" of silence to prevent such disclosure in the future.[5] The district court concluded that Root and Castle would remain on the case.

The prosecution petitioned this court for review pursuant to C.A.R. 21, arguing that the district court abused its discretion by disregarding principles of professional responsibility law that require disqualification of other members of Beasley's firm from representing Aragon absent a waiver of conflict-free counsel. We issued a rule to show cause, and we now make the rule absolute.

## II.

### A.

■ "Loyalty is an essential element in the lawyer's relationship to a client." Colo.

2. A criminal defendant's right to be represented by counsel of choice, grounded in Sixth Amendment jurisprudence, allows the defendant to waive the right to conflict-free representation and prevent disqualification. *See Rodriguez v. District Court*, 719 P.2d 699, 705 (Colo.1986).

3. Chief Justice Directive 89–3 provides in pertinent part:
   The statutes do not authorize the appointment of a law firm in place of a named attorney, and no such appointments should be made.

4. The district court observed:
   [T]his court has not heard any testimony that there was ever any confidentiality divulged to Mr. Aragon's current counsel by Mr. Beasley

regarding his representation of either Mr. Hawkinson or Mr. Velarde. And there has been no representation to Mr. Beasley about any confidentialities that have been gained by Mr. Root or Mr. Castle in regards to the representation of Mr. Aragon.

5. The district court stated:
   Mr. Beasley is prohibited from disclosing any confidences gained during his prior representation of either Mr. Hawkinson or Mr. Velarde to anyone, let alone Messrs. Root, Castle, or Aragon. By the same token, neither Mr. Root nor Mr. Castle can disclose any information they have gained in their representation of Mr. Aragon to anyone.

RPC 1.7 cmt. To provide effective legal assistance, an attorney is obligated to maintain a paramount duty of loyalty to the client. *See Hutchinson v. People,* 742 P.2d 875, 881 (Colo.1987). "The need for defense counsel to be completely free from a conflict of interest is of great importance and has a direct bearing on the quality of our criminal justice system." *Allen v. District Court,* 184 Colo. 202, 205, 519 P.2d 351, 352–53 (1973); *see also People v. Castro,* 657 P.2d 932, 943–45 (Colo.1983).

"If such a conflict arises after representation has been undertaken, the lawyer should withdraw from the representation." Colo. RPC 1.7 cmt. Even after ending the attorney-client relationship, an attorney may not represent another client if the interests of the present and former client are adverse. *See* Colo. RPC 1.9.

■ When an attorney associates with a law firm, the principle of loyalty to the client extends beyond the individual attorney and applies with equal force to the other attorneys practicing in the firm. This principle, known as the "rule of imputed disqualification," appears in Rule 1.10(a) of the Colorado Rules of Professional Conduct and requires disqualification of all members of a law firm when any one of them practicing alone would be disqualified because of a conflict of interest. Rule 1.10(a) provides:

**Imputed Disqualification: General Rule**
(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8(c), 1.9, or 2.2.

*See generally ABA/BNA Lawyer's Manual on Professional Conduct* §§ 51:2001–14 (1995); 1 Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.10 (1997). The rule of imputed disqualification applies to both private firms and public law firms such as a district attorney's office or the office of the state public defender. *See McCall v. District Court,* 783 P.2d 1223, 1227 (Colo.1989).

■ The purpose of the rule is to acknowledge the close personal and financial relationships that exist between an attorney and other members of a law firm. *See Wright v. District Court,* 731 P.2d 661, 663 (Colo.1987); *see generally ABA Standards for Criminal Justice, Prosecution and Defense Function* § 4–3.5(a) (3d ed. 1993) ("Defense Counsel should not permit his or her professional judgment or obligations to be affected by his or her own political, financial, business, property, or personal interests.").

■ The rule of imputed disqualification "can be considered from the premise that a firm of attorneys is essentially one attorney for purposes of the rules governing loyalty to the client, or from the premise that each attorney is vicariously bound by the obligation of loyalty owed by each lawyer" in the firm. Colo. RPC 1.10 cmt. The treatment of attorneys in a firm as one attorney for purposes of loyalty and confidentiality is based on the presumption that those attorneys have access to confidential information about each other's clients.[6] *See Annotated Model Rules of Professional Conduct* 166 (1996). Because Rule 1.10(a) emphasizes loyalty as well as confidentiality, the creation of an "ethical wall" of silence between attorneys will not necessarily prevent the disqualification of all of the members of the firm if the circumstances of the conflict fall within the mandate of the rule. *See In re American Airlines, Inc.,* 972 F.2d 605, 618–19 (5th Cir.1992). "[T]he test does not depend on whether actual confidences were received, but on whether the former and current representation are substantially related." *Atasi Corp. v. Seagate Tech.,* 847 F.2d 826, 829 (Fed.Cir.1988).

---

**6.** The question of whether this presumption is rebuttable is beyond the scope of this opinion. Other jurisdictions have held that the presumption of imputed disqualification may be rebutted under certain circumstances. *See Atasi Corp. v. Seagate Tech.,* 847 F.2d 826, 829 (Fed.Cir.1988) (discussing the "peripheral representation" standard); *English Feedlot, Inc. v. Norden Lab., Inc.,* 833 F.Supp. 1498, 1506–07 (D.Colo.1993); *Skok-ie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc.,* 116 Ill.App.3d 1043, 72 Ill. Dec. 551, 561–62, 452 N.E.2d 804, 814–15 (1983). We have held that under the former Code of Professional Responsibility, the presumption of imputed disqualification is rebuttable in the context of government employees. *See Cleary v. District Court,* 704 P.2d 866, 873 (Colo. 1985).

In reviewing a district court order regarding attorney disqualification, we employ an abuse of discretion standard. *Cf. People v. District Court*, 884 P.2d 707, 710 (Colo.1994) (applying an abuse of discretion standard to reverse a district court's order disqualifying the district attorney); *see also People v. County Court*, 854 P.2d 1341, 1344 (Colo.App.1992) (holding that abuse of discretion is the correct standard in reviewing a district court order disqualifying the district attorney for an appearance of impropriety). Extraordinary relief under C.A.R. 21 is appropriate to review a district court's serious abuse of discretion when an appellate remedy would not be adequate. *See Halliburton v. County Court*, 672 P.2d 1006, 1009 (Colo. 1983).

### B.

In its ruling, the district court reasoned that Rule 1.10 does not apply because Root and Castle are not "associated in a firm" in their representation of Aragon because they were appointed as individual attorneys under Chief Justice Directive 89–3. While it is accurate to describe Root and Castle as representing Aragon in their individual capacities and not as a firm, Root and Castle's personal, financial, and professional responsibilities to members of their firm must be recognized and acknowledged. The rule of imputed disqualification applies with equal force to court-appointed attorneys; nothing in Chief Justice Directive 89–3 suggests otherwise. To the contrary, our case law and statutes governing court-appointed counsel require adherence to the Colorado Rules of Professional Conduct. *See Murphy v. People*, 863 P.2d 301, 304–05 (Colo.1993) (public defender may not represent defendant when impermissible conflict of interest exists); *People v. Schultheis*, 638 P.2d 8, 11 (Colo.1981) (analyzing court-appointed attorney's responsibilities under the Code of Professional Responsibility); § 21–2–101(1), 6 C.R.S. (1997) (stating that alternate defense counsel must proceed in accordance with the Colorado Rules of Professional Conduct). Hence, we reaffirm the fundamental principle manifest in our case law and our statutes that court-appointed attorneys must comply with the ethical standards contained in the Rules of Professional Conduct, and we hold that attorneys appointed in an individual capacity are not exempt from the rule of imputed disqualification that appears in Rule 1.10.

### C.

Applying these principles to this case, because Root, Castle, and Beasley are partners in the same law firm, each attorney of the firm is vicariously bound by the obligation of client loyalty of each of the attorneys in the firm. According to Rule 1.10(a), none of the attorneys in the firm could represent Aragon if any one of them practicing alone would be prohibited from doing so under Rule 1.7, 1.8(c), 1.9, or 2.2. Hence, if Beasley's former representation of Velarde or current representation of Hawkinson barred Beasley from representing Aragon for the murder of Lopez under these rules, then all the members of the firm must be disqualified.

We first examine Beasley's former representation of Velarde. Rule 1.9 governs conflicts of interest involving former clients and provides in relevant part:

**Conflict of Interest: Former Client**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Under this rule, Beasley's former representation of Velarde prohibits Beasley from representing Aragon if the matters are substantially related and if Aragon's interests are materially adverse to the interests of Velarde, unless Velarde consents after consultation.

Beasley represented Velarde in a case in which Velarde was accused of distributing a controlled substance. Velarde's federal drug conviction resulted in part because of the involvement of government informant Norma Lopez. Aragon is charged with the first-degree murder of Norma Lopez and intends to present evidence at trial that Velarde murdered Lopez because Lopez's role as an in-

formant was instrumental to Velarde's arrest and subsequent conviction. Thus, the prosecution of Velarde for the distribution of heroin and the prosecution of Aragon for the murder of Norma Lopez are substantially related, and Aragon's interests are materially adverse to those of Velarde. Additionally, Velarde stood mute at the hearing and refused to consent to the firm's representation of Aragon in the homicide case. Therefore, under Rule 1.9(a), Beasley's former representation of Velarde prohibits Beasley from representing Aragon.

■ Turning to Beasley's representation of Hawkinson, we look to Rule 1.7, which governs conflicts of interest involving current clients and provides in pertinent part:

### Conflict of Interest: General Rule

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

Here, Beasley negotiated a plea bargain for Hawkinson requiring Hawkinson to testify truthfully to Aragon's jailhouse admission at Aragon's trial. Representation of Aragon requires Beasley to discredit the truthfulness of Hawkinson's testimony as to what Aragon told him in jail. Thus, Beasley's representation of Aragon would be adverse to the interests of Hawkinson. *See People v. DeLoach,* 944 P.2d 522, 523 (Colo.1997) (stating that co-defendants' interests were adverse when one defendant was offered a plea bargain in exchange for testimony against the other defendant). At the hearing, Aragon refused to consent to conflict-free counsel, and there is no evidence that Hawkinson was ever asked to consent to concurrent representation. Hence, representation of Aragon by Beasley is prohibited by Rule 1.7(a).

Both Rule 1.9(a) and Rule 1.7(a) prohibit Beasley's representation of Aragon. Applying Rule 1.10(a), Root and Castle may not represent Aragon if a member of the firm, practicing alone, would be prohibited from representing Aragon under Rule 1.9 or Rule 1.7. Therefore, the rule of imputed disqualification requires the disqualification of Root and Castle because of Beasley's past representation of Velarde and current representation of Hawkinson. We hold that the district court erred by failing to apply Rule 1.10 and by failing to acknowledge the conflicts of interest that exist among Root, Castle, and Beasley.

### D.

■ Root and Castle argue in this original proceeding for the first time that disqualification under Rule 1.10(a) is no longer an issue because after the district court issued its order, Beasley terminated his association with the firm and assumed an "office-sharing" relationship with Root and Castle. Root and Castle contend that Rule 1.10(a) does not apply because they are no longer partners with Beasley and their present economic relationship with Beasley does not constitute a "firm" for purposes of Rule 1.10(a). Rather, Root and Castle argue that Rule 1.10(b) explicitly permits their continued representation of Aragon because Root and Castle exchanged no client confidences with Beasley.[7]

Whether Beasley terminated his relationship with the firm for purposes of Rule 1.10 depends on factual questions that can not be resolved by this court. *See* Colo. RPC 1.10 cmt. ("Whether two or more lawyers [sharing an office] constitute a firm within this definition can depend on the specific facts."). The district court was not presented with this issue and made no factual determinations concerning this new development. Therefore, we have neither considered nor addressed the implications of this new pro-

---

7. Rule 1.10(b) of the Rules of Professional Conduct provides:

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer

and not currently represented by the firm, unless:
(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(c) that is material to the matter.

fessional relationship and we express no opinion concerning this new allegation. If Root and Castle subsequently bring this new professional arrangement to the attention of the district court, the district court may conduct such proceedings as it deems necessary to resolve this issue.

## III.

We hold that Rule 1.10(a) of the Colorado Rules of Professional Conduct, when read in conjunction with Rules 1.7(a) and 1.9(a), prohibits the defense attorneys' representation of the defendant in this case, and that the district court abused its discretion by holding that a conflict of interest did not exist. We make the rule absolute and we vacate the district court's order with instructions to disqualify Root and Castle as Aragon's defense counsel due to their conflicts of interest unless Root and Castle request the district court to address the implications of Root, Castle, and Beasley's new "office-sharing" arrangement under Rule 1.10(a) and (b) and the district court determines that continued representation is permitted under that rule.