The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jose R. MIERA, Defendant–Appellant.

No. 06CA1284.

Colorado Court of Appeals, Div. III.

Feb. 7, 2008.

Rehearing Denied March 27, 2008.

John W. Suthers, Attorney General, Roger G. Billotte, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Janet T. Kinniry, Gardner, Colorado, for Defendant–Appellant.

Opinion by Judge LOEB.

Defendant, Jose R. Miera, appeals from a trial court order denying his Crim. P. 35(c) motion for postconviction relief. His motion sought relief from the court's judgment of conviction entered upon jury verdicts finding him guilty of multiple counts of sexual assault on a child. He contends he was denied the right to effective assistance of counsel guaranteed by the United States and Colorado Constitutions. We agree and, accordingly, reverse and remand with directions that a new trial be granted.

## I. Background

Defendant lived with the victim, M.Q., her brother, and their mother in Alamosa. Defendant was appointed the legal guardian of M.Q. and her brother after their mother's death in 1987, and the children continued to live with defendant thereafter.

Beginning in March 1990, the Alamosa County Department of Social Services suspected defendant of sexually molesting M.Q. Investigators routinely interviewed M.Q. for several months. Throughout these interviews, M.Q. denied that defendant had molested her.

In August 1991, a friend and neighbor of defendant, D.R., was accused of sexually assaulting M.Q. by six eyewitnesses, including M.Q. In early September, social workers resumed asking M.Q. whether defendant had sexually molested her. Within a few days, M.Q. told investigators that both defendant and M.Q.'s brother had been sexually molesting her.

D.R. was arrested in January 1992, and his appointed counsel, Public Defender Manuel Lopez, began filing motions on his behalf shortly after his arrest. In February, D.R. pleaded guilty to sexual assault on M.Q., and his sentencing was scheduled for April 14, 1992.

In March 1992, defendant was charged with sexually assaulting M.Q. While still representing D.R., Lopez entered his appearance as counsel for defendant and began filing motions on his behalf on March 24. When D.R. next appeared in court, he withdrew his guilty plea.

Lopez continued to represent both defendant and D.R. until August 1992, when he withdrew from D.R.'s case for unspecified reasons. Several days after Lopez withdrew, defendant was endorsed as a witness in D.R.'s case. In October, D.R. entered into an agreement with the prosecution under which he would make a videotaped statement against defendant in exchange for dismissal

of his case. In February 1993, D.R. was endorsed by the prosecution as a witness in defendant's case.

Defendant's trial took place several months later in September 1993. According to the record, the prosecution advised Lopez shortly before trial that D.R. would not be called to testify. Based on that conversation, which was held off the record, Lopez did not prepare to cross-examine D.R. However, the prosecution called D.R. to testify after Lopez brought his name out at trial through the testimony of a social services caseworker. D.R. testified that he witnessed defendant with his arm around M.Q. and his hand on her breast. Based on this testimony, defendant was convicted of two additional counts of sexual assault. Overall, the jury found defendant guilty of six counts of sexual assault. The trial court sentenced defendant to a total of twenty-six years in the Department of Corrections.

On direct appeal, a division of this court reversed the convictions and sentences based on the two additional counts supported by D.R.'s testimony and affirmed the other four convictions. *People v. Miera*, (Colo.App. No. 93CA2100, Sept. 5, 1996) (not published pursuant to C.A.R. 35(f)). Certiorari was denied by the supreme court, and the mandate issued in July 1997.

In 2000, defendant filed a Crim. P. 35 motion for postconviction relief. The trial court denied the motion without a hearing, and another division of this court vacated the order denying relief and remanded for an evidentiary hearing on defendant's allegations of ineffective assistance of counsel. *People v. Miera*, 2004 WL 915102 (Colo.App. No. 03CA0120, Apr. 29, 2004)(not published pursuant to C.A.R. 35(f)).

The trial court held an evidentiary hearing in October 2005. As pertinent here, defendant argued that he was denied effective assistance of counsel on three grounds. First, he argued that his trial counsel, Lopez, had an actual conflict of interest because of his representation of both defendant and D.R. Second, he argued that Lopez provided constitutionally ineffective assistance of counsel when he stipulated to the admission of numerous hearsay statements at trial.

Third, he argued that Lopez was ineffective by opening the door to D.R.'s testimony. After the hearing, the court issued a written order denying defendant's request for postconviction relief. Defendant now appeals that order.

## II. Conflict of Interest

Defendant contends the trial court erred by denying his Crim. P. 35(c) motion for postconviction relief. Specifically, he claims he was denied effective assistance of counsel throughout the original trial court proceedings because his attorney operated under a conflict of interest. We agree, and thus conclude the trial court erred in denying his Crim. P. 35(c) motion.

"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (quoting Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L.Rev. 1, 8 (1956)). The gravity of the right to counsel, generated by both a criminal defendant's need for assistance when confronted with the "intricacies of the law and the advocacy of the public prosecutor," *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), and the broader need "to assure fairness in the adversary criminal process," *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981), has repeatedly compelled the Supreme Court to reaffirm the well-established principle that the Sixth Amendment right to assistance of counsel is the right to effective assistance of counsel. *See, e.g., Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Cronic*, 466 U.S. at 654–56, 104 S.Ct. 2039; *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the constitutional command."); *Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

■ Generally, to prevail on a claim of ineffective assistance of counsel, the defendant must establish that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense, resulting in a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Davis v. People,* 871 P.2d 769, 772 (Colo.1994)(*Strickland* test applicable under Colorado Constitution).

■ However, where a defendant demonstrates that counsel labored under an actual conflict of interest that adversely affected counsel's performance, the defendant is not required to demonstrate a probable prejudicial effect upon the outcome of the trial to prevail on a claim of ineffective assistance of counsel. *Mickens,* 535 U.S. at 166–67, 122 S.Ct. 1237; *Cuyler,* 446 U.S. at 348–50, 100 S.Ct. 1708; *Dunlap v. People,* 173 P.3d 1054, 1073 (Colo.2007); *People v. Castro,* 657 P.2d 932, 943–44 (Colo.1983); *People v. Hodges,* 134 P.3d 419, 426 (Colo.App.2005) (citing *People v. Kenny,* 30 P.3d 734, 745 (Colo.App. 2000)), *aff'd,* 158 P.3d 922 (Colo.2007).

Under the standard set forth in *Cuyler,* a defendant is relieved of the need to establish the prejudice prong of the *Strickland* test because, in cases of conflicting interests, "the evil ... is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Castro,* 657 P.2d at 943–44 (quoting *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). Hence, the *Cuyler* exception to the *Strickland* standard provides a "needed prophylaxis in situations where *Strickland* itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel." *Mickens,* 535 U.S. at 176, 122 S.Ct. 1237.

■ The *Cuyler* standard thus allows a defendant to assert his or her right to counsel without the "onerous burden of having to prove a negative, that is, demonstrating that his counsel improperly *refrained* from acting in a constitutionally-effective manner." *Moss v. United States,* 323 F.3d 445, 461 (6th Cir.2003). The standard also precludes reviewing courts from applying rules not "susceptible of intelligent, evenhanded application" that "would require, unlike most cases, unguided speculation." *Holloway,* 435 U.S. at 490–91, 98 S.Ct. 1173.

The parties disagree on the proper legal standard to be applied to the conflict of interest claim asserted here. The People argue the trial court properly concluded that this is a case of successive rather than concurrent representation and that, subsequent to *Mickens,* the *Cuyler* exception no longer applies to the type of successive representation present in this case. Defendant argues that this is a case of both concurrent and successive representation and that the *Cuyler* standard, rather than the *Strickland* standard, should be applied to resolve his conflict of interest claim. We agree with defendant.

As our supreme court observed in *Dunlap,* the United States Supreme Court "has made clear that it is an open question whether applying the *Cuyler* exception to conflicts other than multiple concurrent representation is proper, or whether the normal *Strickland* analysis applies." *Dunlap,* 173 P.3d at 1073 n. 24. Nevertheless, in *Dunlap,* the court applied the *Cuyler* exception where the defendant's attorney had previously represented a prosecution witness in an entirely unrelated matter. *Id.* at 1073. The court assumed the exception applied because both parties assumed it applied. *Id.* at 1073 n. 24.

Notably, the People cite no Colorado authority holding that the *Cuyler* exception has been limited to conflicts of multiple concurrent representation, and we have found none. Indeed, the *Cuyler* exception has been applied in several Colorado cases since Justice Scalia noted in dicta in *Mickens* that, as far as the jurisprudence of the Supreme Court was concerned, the scope of conflicts to which *Cuyler* applied was "an open question." *See, e.g., People v. Chang,* 179 P.3d 240, 245 (Colo. App.2007) (unspecified "ethical" conflict); *People v. Kelling,* 151 P.3d 650, 657 (Colo. App.2006) (citing *Mickens,* 535 U.S. at 170– 76, 122 S.Ct. 1237) (alleged conflict arose from defendant's allegation of ineffective assistance of counsel); *Hodges,* 134 P.3d at 426 (relying on *Kenny,* 30 P.3d 734, which was

decided before *Mickens*) (alleged conflict based on animosity and lack of communication between defendant and his counsel); *People v. Gresl,* 89 P.3d 499, 503–04 (Colo. App.2003); *see also People v. Campbell,* 58 P.3d 1148, 1156–58 (Colo.App.2002).

More important, the conflict of interest alleged here is not simply one of successive representation in unrelated matters. Defendant's counsel, Lopez, represented D.R. for almost two months before he was appointed to represent defendant. Lopez's representation of defendant and D.R. was concurrent for over five months before Lopez withdrew from D.R.'s case. Both D.R. and defendant were accused of sexually assaulting M.Q. M.Q.'s initial accusation against defendant was closely related to, if not actually prompted by, the assault allegedly perpetrated by D.R. Finally, D.R. testified against defendant at trial in exchange for the dismissal of charges from which Lopez initially defended him.

We recognize the federal circuit courts have expressed conflicting views as to the scope of the *Cuyler* exception's applicability, particularly in cases of pure successive representation. *See, e.g., Alberni v. McDaniel,* 458 F.3d 860, 874 (9th Cir.2006) (holding that, because Supreme Court left open the question whether *Cuyler* exception applied to counsel's conflict of interest between representation of prosecution witness and defendant, a state court did not err by applying *Cuyler* exception); *Schwab v. Crosby,* 451 F.3d 1308, 1325 (11th Cir.2006)(limiting *Cuyler* exception to cases of concurrent, multiple representation); *Tueros v. Greiner,* 343 F.3d 587, 593 (2d Cir.2003)(noting that *Mickens* discussion of scope of *Cuyler* exception was dicta and not dispositive of issue of *Cuyler*'s applicability to "subjective conflict"); *Smith v. Hofbauer,* 312 F.3d 809, 815–17 (6th Cir. 2002) (question of *Cuyler*'s applicability raised in *Mickens* made conflict of interest claims not based solely on concurrent, multiple representation subject to *Strickland* in federal habeas proceedings); *see also Winfield v. Roper,* 460 F.3d 1026, 1039 (8th Cir. 2006) (declining to answer the question posed in *Mickens* and resolving conflict of interest claim by rejecting claim under both the *Cuyl-*er and *Strickland* standards); *Covey v. United States,* 377 F.3d 903, 907–08 (8th Cir. 2004)(same); *Quince v. Crosby,* 360 F.3d 1259, 1263 (11th Cir.2004)(same).

However, we find it instructive that, under the circumstances here, involving closely related concurrent and successive representation, the federal circuit courts have consistently applied the *Cuyler* standard in the years following *Mickens*. *See United States v. Infante,* 404 F.3d 376, 391 n. 12 (5th Cir.2005) (applying *Cuyler* exception where "[t]he representations at issue ... were closely related in subject matter ... and time"); *Hall v. United States,* 371 F.3d 969, 974 (7th Cir.2004)(applying *Cuyler* exception where successive representations were ten days apart and closely interrelated); *Moss,* 323 F.3d at 461–62 (applying *Cuyler* where counsel's earlier representation of the witness or codefendant was substantially and particularly related to counsel's later representation of defendant, or counsel actually learned particular confidential information during the prior representation of the witness or codefendant that was relevant to defendant's later case); *Rubin v. Gee,* 292 F.3d 396, 402 n. 2 (4th Cir.2002) (noting doubt raised by *Mickens* but nevertheless applying *Cuyler* exception in light of severity of conflict); *see also Jones v. Polk,* 401 F.3d 257, 267 (4th Cir.2005) (applying *Cuyler* exception where counsel simultaneously represented prosecution witness in unrelated matter). At least one state court has reached a similar result. *See Acosta v. State,* 233 S.W.3d 349, 355 (Tex.Crim.App.2007) (holding that *Cuyler* exception extends to conflicts where counsel "actively represented conflicting interests," rather than limiting exception to cases involving codefendants).

We thus conclude Lopez was placed "in a situation inherently conducive to and productive of divided loyalties." *Castro,* 657 P.2d at 945; *see People ex rel. Peters v. Dist. Court,* 951 P.2d 926, 929–30 (Colo.1998); Colo. RPC 1.7 cmt. (effective Jan. 1, 1993); *see also* Colo.Code of Professional Responsibility Canon 5, DR5–105 (effective during 1992). In this situation, *Strickland* is "inadequate to assure vindication of [defendant's] Sixth Amendment right to counsel." *See Mickens,*

535 U.S. at 176, 122 S.Ct. 1237; *see also Moss,* 323 F.3d at 461–62 (citing cases where *Strickland* fails in the successive representation context).

Accordingly, because neither the Supreme Court nor Colorado case law has limited the scope of conflicts of interest triggering the *Cuyler* exception to exclude all conflicts that do not arise from multiple concurrent representation, we reject the People's contention that *Strickland,* rather than *Cuyler,* provides the appropriate standard to analyze defendant's claim of ineffective assistance of counsel based on a conflict of interest. *See Alessi v. State,* 969 So.2d 430, 436–37 (Fla.Dist.Ct. App.2007) (citing *Sliney v. State,* 944 So.2d 270, 279–80 (Fla.2006))(acknowledging limitation of *Cuyler* exception to joint representation by some federal courts, but holding that, in absence of guidance from United States Supreme Court, and because Florida Supreme Court continues to apply *Cuyler* to all conflict of interest claims, *Cuyler* exception applies to alleged financial conflict of interest and alleged conflict involving counsel as a witness).

■ To establish a claim for ineffective assistance of counsel under *Cuyler,* a defendant must demonstrate (1) that his or her counsel was subject to an actual conflict of interest; and (2) that the actual conflict of interest adversely affected counsel's performance. *Cuyler,* 446 U.S. at 348–50, 100 S.Ct. 1708; *Castro,* 657 P.2d at 943–44.

■ An actual conflict of interest is "real and substantial." *People v. Harlan,* 54 P.3d 871, 878 (Colo.2002). It arises when an "attorney's representation of the defendant conflict[s] with some other interest that the attorney also ha[s] professionally undertaken to serve." *Castro,* 657 P.2d at 943.

■ Here, the record shows that Lopez had professionally undertaken to defend D.R. from charges that he sexually assaulted M.Q. before Lopez was appointed to represent defendant on charges of sexually assaulting the same person. The prosecution eventually endorsed D.R. as a witness against defendant. D.R. knew both defendant and M.Q. before the alleged assaults occurred.

Further, defendant and D.R. had conflicting interests in attacking M.Q.'s credibility. After months of denials, M.Q. first accused defendant of sexually assaulting her promptly after the alleged D.R. assault. If D.R. were found guilty of sexually assaulting M.Q., it would have been easier for defendant to explain her accusations that he and her brother sexually assaulted her as effects of a traumatic assault. The credibility of M.Q.'s accusation against defendant was thus inextricably related to the strength of the prosecution's case against D.R. Also, defendant could have, at least theoretically, sought a deal with the prosecution in exchange for his testimony against D.R. From the beginning of his representation of defendant, Lopez endured "the struggle of a lawyer to serve competing masters." *Id.* at 943 n. 11.

When Lopez withdrew from D.R.'s case, the conflict did not abate. *See Peters,* 951 P.2d at 930 ("Even after ending the attorney-client relationship, an attorney may not represent another client if the interests of the present and former client[s] are adverse."); *Rodriguez v. Dist. Court,* 719 P.2d 699, 704 (Colo.1986) (attorney's ethical obligation to preserve the confidences of his or her client obtained during the professional relationship continues after the termination of that relationship); Colo. RPC 1.6, 1.9 (effective Jan. 1, 1993); Colo.Code of Professional Responsibility DR 4–101 & DR 5–105. First, the prosecution endorsed defendant as a witness in D.R.'s case. Next, Lopez's duties of confidentiality and loyalty owed to D.R. came into direct conflict with his duty to represent defendant when D.R. later brokered a deal with the prosecution under which his charges of sexual assault would be dismissed in exchange for his videotaped statement against defendant.

This conflict was further exacerbated when D.R. testified at trial against defendant. When Lopez had the opportunity to cross-examine D.R., he owed defendant a duty to attack and discredit D.R.'s credibility. *See Peters,* 951 P.2d at 932. Yet, at the same time, he also owed D.R. a duty of loyalty and confidentiality. *See Rodriguez,* 719 P.2d at 704 (inherent conflict on the part of public defender arose where, on the one hand, pub-

lic defender might well be restricted in any cross-examination of former client because of the duty to maintain the confidentiality of information received from that client and, on the other hand, public defender might also be tempted to use certain confidential information obtained from former client to impeach her trial testimony).

We thus conclude that Lopez's representation of defendant conflicted with his duty of confidentiality and loyalty to D.R. *See Castro*, 657 P.2d at 943. The conflict of interest was "real and substantial" and thus an actual conflict of interest at least during trial, if not throughout the entire course of his representation of defendant. *See Harlan*, 54 P.3d at 878.

We also conclude that defendant adequately demonstrated that Lopez's actual conflict of interest adversely affected his performance to satisfy his claim of ineffective assistance of counsel. *See Cuyler*, 446 U.S. at 348–50, 100 S.Ct. 1708; *Castro*, 657 P.2d at 943–44.

The record indicates that D.R. was endorsed as a witness against defendant several months before trial. D.R. made a videotaped statement against defendant in exchange for the dismissal of the sexual assault charges against him nearly one year prior to trial. It also appears from the record that the prosecution made the videotape known and available to Lopez prior to trial. However, Lopez never viewed the videotape before trial. Despite several months of notice, Lopez told the trial court that he was unprepared to cross-examine D.R. when the prosecution called him to testify.

On cross-examination, Lopez refrained from asking D.R. about important details surrounding his alleged sexual assault on M.Q. He failed to ask D.R. about the date of the alleged assault. He did not cross-examine him about how he initially pleaded guilty to assaulting M.Q. and then withdrew the plea after defendant had been charged in this case. He refrained from asking about D.R.'s relationship with M.Q. prior to the assault.

Lopez also refrained from asking M.Q. about D.R. In his cross-examination of M.Q., he refrained from asking her about D.R.'s alleged attack and from juxtaposing the timing of D.R.'s alleged assault against M.Q.'s initial accusation against defendant.

Indeed, the adverse effects of the conflict of interest on Lopez's performance were not limited to his conduct at trial. For example, nothing in the record indicates that, during plea negotiations, Lopez sought to negotiate a deal with the prosecution on defendant's behalf in exchange for his testimony against D.R., especially in light of the fact that defendant had been endorsed as a witness in the case against D.R.

Overall, we cannot say whether the outcome of the trial or plea negotiations would have been different but for Lopez's failure to pursue the actions outlined above. *See Holloway*, 435 U.S. at 490, 98 S.Ct. 1173. However, we conclude Lopez's failure to pursue such actions is inextricably linked to his duty of confidentiality owed to D.R. In our view, defendant has demonstrated that Lopez was subject to an actual conflict of interest that adversely affected his performance. *See Mickens*, 535 U.S. at 170–76, 122 S.Ct. 1237; *Armstrong v. People*, 701 P.2d 17, 24 (Colo. 1985); *Castro*, 657 P.2d at 945. This demonstration is sufficient to establish prejudice, *Kenny*, 30 P.3d at 745, and to satisfy a claim of ineffective assistance of counsel. *Cuyler*, 446 U.S. at 348–50, 100 S.Ct. 1708; *Castro*, 657 P.2d at 943–44.

■ We also agree with defendant that the record here does not demonstrate a valid waiver of his right to conflict-free counsel. A defendant can waive the right to conflict-free counsel if the waiver is voluntary, knowing, and intelligent. *Dunlap*, 173 P.3d at 1070. Here, the trial court made a factual finding that defendant privately expressed his desire to have Lopez continue to represent him after Lopez disclosed the conflict of interest. However, the court also found and concluded with record support that, because a waiver was not made on the record and there was no proper advisement by the court, *see Castro*, 657 P.2d at 946 n. 10, the court was precluded from finding that defendant made a "knowing, free and voluntary relinquishment of [his] right to conflict free counsel." The court further found that Lopez's failure to request the trial court to advise defendant

with regard to the conflict on the record when the prosecution decided to call D.R. was "a serious procedural error." Because the trial court's ruling on the issue of waiver is supported by the record, we will not disturb it on review. *See People v. Conner,* 148 P.3d 235, 238 (Colo.App.2006).

Accordingly, we conclude the trial court erred in denying defendant's Crim. P. 35(c) motion for postconviction relief.

### III. Ineffective Assistance of Counsel Under *Strickland*

Because of our resolution of this matter, we need not address defendant's remaining contentions that he was denied effective assistance of counsel under the *Strickland* standard.

### IV. Conclusion

In sum, we conclude defendant successfully demonstrated that he was denied effective assistance of counsel by showing that his counsel labored under an actual conflict of interest that adversely affected his performance. The trial court, therefore, erred in denying defendant's motion for postconviction relief on that ground.

The trial court's order denying defendant's motion for postconviction relief is reversed, and the case is remanded with directions to grant a new trial.

Judge TAUBMAN and Judge HAWTHORNE concur.