**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**John Estel CURREN, Defendant– Appellee.**

No. 09CA0872.

Colorado Court of Appeals, Div. I.

Nov. 25, 2009.

viction on two counts of felony first degree murder, and ordered a new trial based on an actual conflict of interest of trial counsel. More specifically, the prosecution argues (1) there was no actual conflict of interest that adversely affected trial counsel's performance; (2) trial counsel investigated the allegation giving rise to the conflict of interest, determined it to be groundless, and proceeded in good faith; (3) there was only a potential conflict of interest; and (4) defendant failed to show that it resulted in prejudice to him as required by *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We affirm.

In June 1997, the corpses of two drug dealers were discovered in a ditch. The investigation ultimately led to defendant, who, along with four others, allegedly assaulted and suffocated the drug dealers, took their money and drugs, and deposited their bodies in the ditch.

Following his arrest, defendant retained private trial counsel (trial counsel) to represent him. Defendant was charged with two counts of after deliberation first degree murder, § 18–3–102(1)(a), C.R.S.2009; two counts of felony first degree murder, § 18–3–102(1)(b), C.R.S.2009; two counts of conspiracy to commit first degree murder, §§ 18–2–201(1), 18–3–102, C.R.S.2009; two counts of conspiracy to commit aggravated robbery, §§ 18–2–201(1), 18–4–303, C.R.S.2009; two counts of aggravated robbery, § 18–4–303; and two mandatory sentence enhancers for crimes of violence, § 18–1.3–406, C.R.S.2009. Prior to trial scheduled in 1998, defendant absconded to Mexico.

Defendant was arrested in Mexico and returned to Colorado in 2001. Defendant, still represented by trial counsel, became concerned that trial counsel was not adequately preparing his case and, therefore, retained second counsel to review the work of trial counsel. Defendant signed a release authorizing trial counsel to provide the discovery materials to second counsel.

Defendant told second counsel that trial counsel had advised him to flee to Mexico (the allegation), and that he acted upon that advice. Second counsel advised trial counsel

Donald Quick, District Attorney, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, for Plaintiff–Appellant.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge ROY.

The prosecution appeals from an order granting defendant John Estel Curren's Crim. P. 35(c) motion which vacated his con-

of the allegation following a motions hearing in this case. Trial counsel and second counsel then argued outside the courtroom, causing the court to request that they leave the building. The two continued arguing in the courthouse parking lot. Trial counsel took great umbrage at the allegation and refused to share the discovery materials or cooperate with second counsel until second counsel entered an appearance for defendant in the criminal proceedings.

Trial counsel's partner and second counsel then met with defendant at defendant's request. It is not clear from the testimony whether trial counsel's partner actually asked defendant if he made the allegation; however, it is clear that he advised defendant he would have to discharge either trial counsel or second counsel. Then, defendant stated he would work with trial counsel. Trial counsel's partner testified that he was aware that if defendant made the allegation, regardless of its truth, then trial counsel would have to withdraw due to a conflict of interest. At the end of the discussion, trial counsel's partner assumed that defendant had not made the allegation and that withdrawal by trial counsel was not necessary. Neither trial counsel, his partner, nor second counsel ever informed the trial court of the allegation. The prosecution relied heavily on the failure to inform the court in arguing that defendant had not made the allegation.

The trial court granted defendant's motion in limine excluding any evidence of his having absconded to Mexico. According to trial counsel, during trial, he advised defendant not to testify for several reasons, primarily dealing with defendant's demeanor, and none dealing with the allegation. Defendant did not testify, which later formed the basis for a separate claim of ineffective assistance of trial counsel.

Before trial, the prosecution dismissed the conspiracy counts. The jury found defendant not guilty of premeditated first degree murder and its lesser included counts of second degree murder and manslaughter; not guilty of one, and guilty of the other, aggravated robbery count; and guilty of both felony murder counts. Defendant received two consecutive life sentences on the felony murder convictions and a concurrent sentence of twenty-four years for the aggravated robbery conviction.

On direct appeal, defendant's convictions for felony murder were affirmed; however, defendant's conviction for aggravated robbery was vacated because it merged into one of the felony murder convictions. *People v. Curren*, 2005 WL 1303964 (Colo.App. No. 02CA1144, June 2, 2005) (not published pursuant to C.A.R. 35(f)).

After the mandate issued from the direct appeal, defendant filed a Crim. P. 35(c) motion, alleging trial counsel labored under an actual conflict of interest. Following a hearing, the trial court concluded, contrary to the allegation, that trial counsel had not advised defendant to abscond to Mexico. However, it also found defendant had made the allegation, which established an actual conflict of interest because it placed trial counsel in the position of having to defend his client as to the pending charges and himself as to the allegation. The trial court vacated defendant's convictions and ordered a new trial. The prosecution appeals.

## I. Defendant's Preliminary Arguments

At the outset, defendant contends that: (1) the appeal should be dismissed for lack of jurisdiction because the notice of appeal was untimely; (2) the appeal should be dismissed because the prosecution judicially admitted that if defendant had made the allegation, then an actual conflict existed; and (3) this appeal does not toll the time within which a new trial must be held because the appeal is not an interlocutory appeal.

### A. Interlocutory Appeal

Defendant contends that this court does not have jurisdiction because the prosecution failed to file a timely notice of appeal. His argument is predicated on this being an interlocutory appeal. We disagree.

■ A proceeding is interlocutory if it intervenes between the commencement of and the final decision in a case. *People v. Medina*, 40 Colo.App. 490, 492, 583 P.2d 293, 296 (1978). An appeal is not interlocutory when it is from a final order after trial. *People v.*

*Voss*, 191 Colo. 338, 341, 552 P.2d 1012, 1014 (1976).

Under C.A.R. 4(b), the notice of appeal must be filed within forty-five days after the entry of a final judgment or order. A final judgment is generally defined as one that ends the particular action in which it is entered, leaving nothing further for the pronouncing court to do in order to completely determine the rights of the parties involved. *Stillings v. Davis*, 158 Colo. 308, 310, 406 P.2d 337, 338 (1965).

However, section 16–12–102(1), C.R.S. 2009, specifically provides that, in a criminal proceeding, an order of the trial court granting a new trial is a final order that is immediately appealable by the prosecutor. *See People v. Vance*, 933 P.2d 576, 577 n. 2 (Colo. 1997), *disapproved of on other grounds by Griego v. People*, 19 P.3d 1, 8 (Colo.2001); *People v. Smith*, 921 P.2d 80, 82 (Colo.App. 1996).

Because an order granting a new trial is a final order, the prosecution was required to file this appeal within forty-five days of the order, which it did. Accordingly, we conclude that the notice of appeal was timely.

## B.  Speedy Trial

Defendant also argues that if we determine the appeal is not interlocutory, then this appeal does not toll speedy trial. We do not address the issue.

Following the filing of the notice of appeal in this matter, defendant filed a motion captioned "Assertion of Right to Speedy Trial and Demand for a Trial Date Within 6 Months of May 7, 2009." The apparent purpose of this motion was to preserve defendant's statutory right to a speedy trial. During oral argument, defense counsel represented that the trial court denied the motion after the notice of appeal was filed in this matter, concluded that this appeal tolled the time for retrial, and declined to schedule the trial as requested. While the motion is in the record on appeal, the trial court's ruling is not. Therefore, we do not address the argument. *People v. Salazar*, 964 P.2d 502, 507 (Colo.1998); *People v. Newton*, 940 P.2d 1065, 1069 (Colo.App.1996), *aff'd in part*, 966 P.2d 563 (Colo.1998).

## C.  Judicial Admission

Finally, defendant argues that we should dismiss the appeal because, at the hearing, the prosecution judicially admitted that if defendant had made the allegation, then an actual conflict existed. We are not persuaded.

A judicial admission is a formal, deliberate declaration that a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute, is conclusive on the party making it, need not be written when stated orally in open court, and continues to have effect throughout the proceedings. *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo.1986); *Miller v. Brannon*, 207 P.3d 923 (Colo.App.2009); *People v. Backus*, 952 P.2d 846, 849 (Colo. App.1998).

Because a record on appeal speaks for itself, an appellate court may accept, but is not bound by, the concessions of counsel regarding the record's contents or inferences drawn therefrom. *Backus*, 952 P.2d at 850. An appellate court is not required to reach a result because the prosecution has changed its legal position on appeal. *Id.* at 849 (where prosecution, in its answer brief, initially conceded that trial court failed to make findings of good cause as required under the speedy trial statute but then, in a supplemental brief following oral argument, abandoned that position, the division determined the original position did not constitute a judicial admission that precluded the contrary argument).

As in *Backus*, here defendant relies on civil cases that apply the general principle that litigants should not be allowed to take one factual position in their pleadings and another after trial has begun. *See id.* However, this doctrine has been applied in very limited contexts, none of which is present here. Defendant has not cited authority, nor have we found any, stating we should be bound by the prosecution's statements in the trial record. *Id.*

Here, the prosecution clearly stated its position that defendant did not make the allegation, and, without an allegation, there could be no potential or actual conflict. While the prosecution acknowledged that if the allegation had been made, there would have been a conflict, it did not address whether the allegation would have created a potential or an actual conflict. However, the trial court concluded the allegation was made, and that the allegation, even though not true, yielded an actual conflict of interest. We conclude the prosecutor's statements in closing argument were not formal, deliberate declarations for the purpose of dispensing with proof of facts. Rather, the prosecution's closing argument was predicated on the singular ground that the allegation was not made. Consequently, we reject defendant's assertion that the prosecution's statement was a judicial admission that would preclude the alternative argument on appeal.

## II. Issue on Appeal

The prosecution contends the trial court erred in concluding that an actual conflict of interest existed, necessitating a new trial. We disagree.

The trial court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing, and when the evidence in the record supports the trial court's findings, they will not be disturbed on review. *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo.2007); *Kailey v. Colo. State Dep't of Corr.*, 807 P.2d 563, 567 (Colo.1991). We defer to a postconviction court's findings of fact when supported by sufficient record evidence, but review its conclusions of law de novo. *People v. Romero*, 953 P.2d 550, 555 (Colo.1998).

A criminal defendant is constitutionally entitled to effective assistance of counsel. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. To establish ineffective assistance of counsel, a defendant must prove (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the defendant was prejudiced by counsel's deficiencies. *Id.* at 687, 104 S.Ct. 2052; *People v. Naranjo*, 840 P.2d 319, 325 (Colo.1992). This constitutional issue is a mixed question

of law and fact that we review de novo. *United States v. Zunie*, 302 Fed.Appx. 759, 761 (10th Cir.2008).

A defendant's right to conflict-free counsel is a subset of his or her right to effective assistance of counsel. *Silva v. People*, 156 P.3d 1164, 1170 (Colo.2007); *People v. Harlan*, 54 P.3d 871, 879 (Colo.2002); *People v. Martinez*, 869 P.2d 519, 524 (Colo. 1994). However, when a defendant alleges the denial of his or her right to conflict-free counsel, establishes an actual conflict of interest, and establishes that the conflict of interest adversely affected counsel's performance, he or she need not show actual prejudice. *Cuyler v. Sullivan*, 446 U.S. 335, 349–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

### A. Actual Conflict of Interest

An actual conflict of interest is one that is real and substantial, and adversely affects counsel's performance, while a potential conflict of interest is one that is possible or nascent, and in all probability will arise. *Mickens v. Taylor*, 535 U.S. 162, 170–71, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Harlan*, 54 P.3d at 878. The distinction between actual and potential conflicts of interest is significant because it may impact the issue of waiver. *Harlan*, 54 P.3d at 880. An actual conflict of interest is not always waivable. However, if the court finds it is waivable, it must obtain an express and valid waiver from the defendant. In contrast, a potential conflict of interest, when it is waivable, may not always require an express waiver. *Id.* In cases where the potential conflict of interest is remote, waiver may not be required at all. *Id.* In those instances in which the scope of representation is limited, a potential conflict of interest is more readily waivable. *Id.*

Once counsel is aware of an actual or potential conflict of interest, counsel must (1) inform the defendant of the nature of the conflict; (2) describe in plain terms the specific ways in which the conflict may affect counsel's ability to effectively represent the defendant; (3) inform the court and place on

the record the nature of the conflict; and (4) advise the court that a complete disclosure has been made to the defendant. *Id. People v. Castro,* 657 P.2d 932, 946 n. 10 (Colo.1983); *People v. Edebohls,* 944 P.2d 552, 556 (Colo. App.1996). Neither trial counsel nor second counsel reported the conflict of interest to the trial court. Therefore, the waiver procedures outlined above were not followed and no express waiver of conflict-free counsel was made by defendant. The prosecution has not argued to the contrary and does not assert any implied waiver.

Here, the trial court found, with support in the record, that defendant made the allegation to second counsel. The record shows that when trial counsel became aware of the allegation, he was very upset and that both trial counsel and his partner recognized the significant impact of the allegation on the ability of trial counsel to continue the representation, even if it was not based in fact.

In addition, trial counsel's conflicting interests were not trivial. In 2001, as applicable here, the Colorado Rules of Professional Conduct provided:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless;
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation....

Colo. RPC 1.7 (effective Jan. 31, 1993).[1]

A violation of the rule is sanctionable. Moreover, if the allegation were true, it also could have criminal implications for trial counsel. *See* § 18–8–105, C.R.S.2009 (accessory to crime).

■■ An actual conflict of interest arises when it places counsel in the position of having to simultaneously defend his or her client and himself or herself, particularly in those instances in which counsel faces potential professional and criminal sanctions. *United States v. Greig,* 967 F.2d 1018, 1021–22 (5th Cir.1992); *see also United States v. Levy,* 25 F.3d 146, 157 (2d Cir.1994) (actual conflict existed where counsel allegedly assisted in defendant's flight or advised defendant to flee the jurisdiction); *Virgin Islands v. Zepp,* 748 F.2d 125, 136 (3d Cir.1984) (despite no direct evidence of wrongful conduct by the attorney, an actual conflict existed in light of allegation that attorney had aided in the destruction of evidence, because he was potentially liable for aiding and abetting and thus had to defend himself against the defendant's allegation, as well as defend the defendant). *See generally* 3 W.R. La-Fave et al., *LaFave Criminal Procedure* § 11.9(a), at 868 n. 13, 872 n. 25 (3d ed.2009).

Therefore, we conclude that the trial court did not err in concluding that trial counsel operated under an actual conflict of interest.

### B. Adverse Effect

The remaining question is whether trial counsel's actual conflict of interest requires a new trial. We conclude that it does.

■■ Following the Crim. P. 35(c) hearing, the trial court concluded:

> I think that there are clear adverse effects that that had on ... the defense of the [d]efendant. Starting with [trial counsel's] reaction towards [second counsel] coming into this.

> Now, I understand that attorneys are egotistical. So are judges. I understand that we're jealous. I understand that we don't like anybody poking their fingers in our pie. But it seems to me that the reaction that [trial counsel] had was extreme. He refused to give discovery over to [second counsel]. Even though he was instructed by his client to do so, and had been given a release of information by his client he refused to do so. I don't know that he has that authority.

---

1. Colo. RPC 1.7 (1993) was repealed and reenacted by the Colorado Supreme Court on April 12, 2007, effective January 1, 2008. While the structure and approach of the new rule is different, it does not appear to have substantively changed. *See* Colo. RPC 1.7 cmt. General Principles [1]-[4], Personal Interest Conflicts [10] (2008).

It precipitated ... an argument that occurred in the courthouse that was so loud that the division clerk had to go out and tell these gentlemen to leave this building, and proceeded all the way through the parking lot.

I note that pursuant to the [jail] logs that were presented ... there were few and minimal contacts between [trial counsel] and [defendant] prior to trial; 13–minute contact here, 20–minute contact here. I think there were four. *He did not call [to testify] his client. He did not call [to testify] his client's mother. Now, he [has] given a reason why he didn't call his client, and maybe that's a legitimate reason. But I think that there is also a likelihood that had he called his client ... the issue of the flight of [defendant] very well may have been presented to the jury, even though [the trial court] made a pretrial determination that the flight instruction would not be given to the jury, and that's different, whether or not there is evidence of him leaving the country, and the flight instruction may have been different things, and the Court finds that there is a likelihood that that conflict may have factored into the decisions that [trial counsel] made.*

For all of those reasons, the Court finds that the 35(c) motion that was filed is well taken. The Court finds that because of the conflict that existed, which did, in fact, have an adverse affect [sic] on the Defendant's rights, that he was, in fact, denied effective assistance of counsel, and for that reason, the Court is granting the motion for 35(c). I am vacating the convictions for murder and ordering that the matter be re-set for trial.

(Emphasis added.)

*Cuyler v. Sullivan* involved dual representation in which one attorney represented multiple defendants in the same proceeding. There is a large body of case law dealing with dual representations. The Supreme Court stated the analysis as follows: "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708. It also made it clear that "adversely affected" does not mean prejudice, stating:

> *Glasser [v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) ] established that unconstitutional multiple representation is never harmless error. Once the Court concluded that Glasser's lawyer had an actual conflict of interest, it refused "to indulge in nice calculations as to the amount of prejudice" attributable to the conflict. The conflict itself demonstrated a denial of the "right to have the effective assistance of counsel." [315 U.S. at 76, 62 S.Ct. 457]. Thus, a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. *See [Holloway*, 435 U.S. at 487–91, 98 S.Ct. 1173]. But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *See Glasser*, [315 U.S. at 72–75, 62 S.Ct. 457].

*Cuyler*, 446 U.S. at 349–50, 100 S.Ct. 1708.

The first conflict of interest case in Colorado, post-*Cuyler*, is *People v. Castro*, 657 P.2d at 943–45. *Castro* was a dual representation case with a twist. There, defense counsel represented the defendant and also represented the district attorney with respect to an elector's recall petition. The court posited the question as follows: "In resolving this claim we must determine: (1) whether the defense attorney's simultaneous representation of the district attorney in other litigation constituted an actual conflict of interest; and (2) whether, if such conflict existed, the defendant understandingly waived his right to conflict-free representation." 657 P.2d at 944. Significantly, this formulation does not include a separate determination of "adverse effect."

In determining whether there was an actual conflict of interest, the *Castro* court spoke in terms of possibilities, not probabilities and did not require an adverse effect. That is, the court speculated that the prosecutor *might* take a hard line on plea bargaining to avoid an appearance of impropriety. The

defense attorney *might* be reluctant to incur the disfavor of the district attorney by pressing for a plea bargain or *might* be concerned about the impact of an acquittal on the district attorney. With respect to the latter, the court stated:

> It is inconceivable that a defense attorney in these circumstances could be oblivious to the fact that an acquittal might well add fuel to the voters' effort to recall the district attorney. The extent to which such an apprehension may have consciously or unconsciously manifested itself in defense counsel's performance is a matter we need not decide here. What is critical, in our view, is the presence of a real and substantial conflict that placed the defense attorney in a situation inherently conducive to and productive of divided loyalties.

*Id.* at 945.

The *Castro* court went on to adopt the reasoning of *Zuck v. Alabama,* 588 F.2d 436 (5th Cir.1979), which under similar circumstances stated:

> A defense attorney must be free to use all his skills to provide the best possible defense for his client. Despite the noblest of intentions, the defense attorneys here may have been tempted to be less zealous than they should have been in the presentation of [the defendant's] case. This possibility is sufficient to constitute an actual conflict of interest as a matter of law.

*Id.* at 945 (quoting *Zuck,* 588 F.2d at 439–40).

It appears our supreme court in *Castro* merged adverse effect into the determination of an actual conflict of interest. After concluding that there was an actual conflict of interest and no waiver, our supreme court reversed the judgment and remanded for a new trial. *Id.* at 946.

We conclude, under the *Castro* analysis, that defendant, having established that trial counsel operated under an actual conflict of interest, the trial court's order vacating his conviction and granting a new trial must be affirmed.

However, subsequent to *Castro,* several divisions of this court have formulated different analyses that include a separate consideration of adverse effect. *See People v. Miera,*

183 P.3d 672, 678 (Colo.App.2008) (adverse effect is shown when defendant demonstrates counsel's failure to pursue an action is inextricably linked to the actual conflict); *People v. Chang,* 179 P.3d 240, 244 (Colo.App.2007) (following the Third Circuit test in *Vance v. Lehman,* 64 F.3d 119, 124 (3d Cir.1995), by stating the defendant "must identify something that counsel chose to do or not do, as to which he had conflicting duties, and must show that the course taken was influenced by that conflict"); *People v. Mata,* 56 P.3d 1169, 1173 (Colo.App.2002) (defendant must point to an instance where counsel's actions might have been hindered by concern for his own interests); *People v. Kenny,* 30 P.3d 734, 745 (Colo.App.2000) (defendant must point to specific instances in the record to suggest actual impairment of his interests). Viewed chronologically, these cases appear to increase the evidentiary burden necessary to show adverse effect.

In this case, defendant testified at the Crim. P. 35(c) hearing concerning his decision-making process as to his right to testify at trial. On direct examination, he reiterated the allegation and testified that trial counsel told him he should not testify because of his pending drug case in Kansas. Subsequently, on cross-examination, he testified that despite the order excluding the evidence that he had absconded, he was advised that the evidence could come in if he "opened the door" during his testimony.

Based on this testimony, and other circumstances found by the trial court, we conclude that regardless of which analysis is employed, *Castro, Kenny, Mata, Chang,* or *Miera,* the record supports the trial court's finding and conclusions that trial counsel's actual conflict of interest adversely affected his representation of defendant and, therefore, we conclude that the trial court did not abuse its discretion in granting a new trial.

The order is affirmed.

Judge TAUBMAN and Judge GABRIEL concur.